# In the United States Court of Appeals for the Fourth Circuit

---

TYRONE HENDERSON, SR., GEORGE O. HARRISON, JR., AND ROBERT MCBRIDE,
individually and on behalf of others similarly situated,
*Plaintiffs-Appellants,*

v.

THE SOURCE FOR PUBLIC DATA, L.P., d/b/a Publicdata.com, SHADOWSOFT,
INC., HARLINGTON-STRAKER STUDIO, INC., DALE BRUCE STRINGFELLOW,
*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of Virginia at Richmond
Case No. 3:20-cv-00294-HEH (The Honorable Henry E. Hudson)

---

## JOINT APPENDIX

---

JENNIFER D. BENNETT
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

MATTHEW WESSLER
GUPTA WESSLER PLLC
2001 K Street, NW, Suite 850 North
Washington, DC 20006
(202) 888-1741

*Counsel for Plaintiffs-Appellants
(continued on inside cover)*

October 8, 2021

MISHA TSEYTLIN
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
(608) 999-1240
*misha.tseytlin@troutman.com*

TIMOTHY J. ST. GEORGE
TROUTMAN PEPPER HAMILTON
SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
(804) 697-1254

*Counsel for Defendants-Appellees
(continued on inside cover)*

LEONARD A. BENNETT
CRAIG C. MARCHIANDO
CONSUMER LITIGATION ASSOCIATES,
P.C.
763 J. Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
(757) 930-3660

KRISTI C. KELLY
KELLY GUZZO PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7570

*Counsel for Plaintiffs-Appellants*

RONALD I. RAETHER, JR.
TROUTMAN PEPPER HAMILTON
SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, California 92614
(949) 622-2722

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

| Dkt. No. | Document | Page |
|---|---|---|
| | District Court Docket Report | JA1 |
| −56− | Second Amended Class Action Complaint | JA14 |
| −57− | Answer to Second Amended Class Action Complaint | JA48 |
| −63− | Defendants' Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) | JA80 |
| −78− | Memorandum Opinion Granting Defendants' Motion for Judgment on the Pleadings | JA83 |
| −79− | Order Granting Defendants' Motion for Judgment on the Pleadings | JA97 |
| −80− | Notice of Appeal | JA98 |

**U.S. District Court**
**Eastern District of Virginia - (Richmond)**
**CIVIL DOCKET FOR CASE #: 3:20-cv-00294-HEH**

| | |
|---|---|
| Henderson, Sr., et al. v. The Source for Public Data, L.P., et al. | Date Filed: 04/21/2020 |
| Assigned to: District Judge Henry E. Hudson | Date Terminated: 05/19/2021 |
| Case in other court:  USCA, REdwards, Case Manager, 21-01678 | Jury Demand: Plaintiff |
| Cause: 15:1681 Fair Credit Reporting Act | Nature of Suit: 480 Consumer Credit |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Tyrone Henderson, Sr.,**
*on behalf of himself and others similarly*
*situated*

represented by **Amy L. Austin**
Consumer Litigation Associates
(Richmond)
626 E Broad Street
Suite 300
Richmond, VA 23219
804-905-9904
Fax: (757) 930-3662
Email: amy_austin@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Joseph Guzzo**
Kelly Guzzo PLC
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
703-424-7576
Fax: 703-591-0167
Email: aguzzo@kellyguzzo.com
*ATTORNEY TO BE NOTICED*

**Craig Carley Marchiando**
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
(757) 930-3660
Fax: (757) 930-3662
Email: craig@clalegal.com
*ATTORNEY TO BE NOTICED*

**Dale Wood Pittman**
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb St
Petersburg, VA 23803-3212

(804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com
*ATTORNEY TO BE NOTICED*

**Kristi Cahoon Kelly**
Kelly Guzzo PLC
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
703-424-7570
Fax: 703-591-9285
Email: kkelly@kellyguzzo.com
*ATTORNEY TO BE NOTICED*

**Leonard Anthony Bennett**
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**George O. Harrison, Jr.,**
*on behalf of himself and others similarly situated*

represented by    **Amy L. Austin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Joseph Guzzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Craig Carley Marchiando**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Dale Wood Pittman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristi Cahoon Kelly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leonard Anthony Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Robert McBride**
*on behalf of himself and others similarly*

represented by    **Amy L. Austin**
(See above for address)

*situated*

LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Andrew Joseph Guzzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Craig Carley Marchiando**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Dale Wood Pittman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristi Cahoon Kelly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leonard Anthony Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Source for Public Data, L.P.**
*doing business as*
Publicdata.com

represented by **David Neal Anthony**
Troutman Pepper Hamilton Sanders LLP
(Richmond)
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
804-697-5410
Fax: 804-698-5118
Email: david.anthony@troutman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harrison Scott Kelly**
Troutman Pepper Hamilton Sanders LLP
(Richmond)
1001 Haxall Point
Suite 1500
Richmond, VA 23219
(804) 697-2202
Fax: (804) 697-1339
Email: scott.kelly@troutman.com
*ATTORNEY TO BE NOTICED*

**Ronald Irvin Raether , Jr.**
Troutman Pepper Hamilton Sanders LLP
(CA/NA)
5 Park Plaza
Suite 1400
Irvine, CA 92614

JA3

**NA**
937-227-3733
Fax: 937-227-3717
Email:
ronald.raether@troutmansanders.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy James St. George**
Troutman Pepper Hamilton Sanders LLP
(Richmond)
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
804-697-1254
Email: tim.stgeorge@troutman.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Shadowsoft, Inc.**                    represented by **David Neal Anthony**

Troutman Sanders LLP (Richmond)
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
804-697-5410
Fax: 804-698-5118
Email:
david.anthony@troutmansanders.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harrison Scott Kelly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ronald Irvin Raether , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy James St. George**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Harlington-Straker Studio, Inc.**      represented by **David Neal Anthony**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harrison Scott Kelly**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Ronald Irvin Raether , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy James St. George**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dale Bruce Stringfellow**              represented by **David Neal Anthony**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harrison Scott Kelly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ronald Irvin Raether , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy James St. George**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/21/2020 | 1 | Complaint ( Filing fee $ 400, receipt number 0422-7170756.), filed by Tyrone Henderson, Sr.,, Robert McBride, on behalf of themselves and others similarly situated, George O. Harrison, Jr.,. (Attachments: # 1 Civil Cover Sheet)(Bennett, Leonard) (Main Document 1 replaced on 4/21/2020) (jsau, ). (Entered: 04/21/2020) |
| 04/21/2020 | 2 | Proposed Summons re 1 Complaint, *The Source for Public Data, L.P., d/b/a Publicdata.com* by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride, on behalf of themselves and others similarly situated. (Bennett, Leonard) (Entered: 04/21/2020) |
| 04/21/2020 | 3 | Proposed Summons re 1 Complaint, *Shadowsoft, Inc*. by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride, on behalf of themselves and others similarly situated. (Bennett, Leonard) (Entered: 04/21/2020) |
| 04/21/2020 | 4 | Proposed Summons re 1 Complaint, *Harlington-Straker Studio, Inc*. by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride, on behalf of themselves and others similarly situated. (Bennett, Leonard) (Entered: 04/21/2020) |
| 04/21/2020 | 5 | Proposed Summons re 1 Complaint, *Dale Bruce Stringfellow* by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride, on behalf of themselves and others similarly situated. (Bennett, Leonard) (Entered: 04/21/2020) |
| 04/21/2020 | | Initial Case Assignment to District Judge Robert E. Payne. (jsau, ) (Entered: 04/21/2020) |

| 04/21/2020 | 6 | Summons Issued as to Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. NOTICE TO ATTORNEY: **REMOVE HEADERS** Print out two electronically issued summons and one copy of the attachments for each defendant to be served with the complaint. (jsau, ) (Entered: 04/21/2020) |
|---|---|---|
| 05/22/2020 | 7 | Consent MOTION For Entry of an Agreed Order Clarifying the Time Within Which Defendants Must File Their Responsive Pleadings by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Attachments: # 1 Exhibit 1 (Proposed Order))(Anthony, David) (Entered: 05/22/2020) |
| 05/22/2020 | 8 | Financial Interest Disclosure Statement (Local Rule 7.1) by The Source for Public Data, L.P.. (Anthony, David) (Entered: 05/22/2020) |
| 05/22/2020 | 9 | Financial Interest Disclosure Statement (Local Rule 7.1) by Shadowsoft, Inc.. (Anthony, David) (Entered: 05/22/2020) |
| 05/22/2020 | 10 | Financial Interest Disclosure Statement (Local Rule 7.1) by Harlington-Straker Studio, Inc.. (Anthony, David) (Entered: 05/22/2020) |
| 05/26/2020 | 11 | ORDER re: 7 Consent MOTION For Entry of an Agreed Order Clarifying the Time Within Which Defendants Must File Their Responsive Pleadings that the defendants, The Source for Public Data, L.P., d/b/a Publicdata.com, Shadowsoft, Inc., Harlington-Straker Studio, Inc., and Dale Bruce Stringfellow, shall be GRANTED an extension of time until on or before July 21, 2020 to file their responsive pleadings, including its Answer, to the Complaint filed by Tyrone Henderson, Sr., George O. Harrison Jr. and Robert McBride. Signed by District Judge Robert E. Payne on 05/26/2020. (walk, ) (Entered: 05/26/2020) |
| 06/05/2020 | 12 | Certificates of Compliance by Tyrone Henderson, Sr., Robert McBride and George O. Harrison, Jr.. Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow and The Source for Public Data, L.P. served on 06/55/2020, Answer due: 06/26/2020 (please see the Court's Order dated 05/26/2020 (Document 11 ) for the updated Answer due date). (walk, ). Modified docket entry on 06/30/2020. (walk, ) (Entered: 06/05/2020) |
| 07/16/2020 | 13 | Motion to appear Pro Hac Vice by Ronald Irvin Raether, Jr. and Certification of Local Counsel David Neal Anthony Filing fee $ 75, receipt number 0422-7303898. by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Anthony, David) (Entered: 07/16/2020) |
| 07/21/2020 | 14 | ORDER GRANTING 13 Motion by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow and The Source for Public Data, L.P. for the Admission of Ronald I. Raether, Jr. Esquire. Signed by District Judge Robert E. Payne on 07/21/2020. (walk, ) (Entered: 07/21/2020) |
| 07/21/2020 | 15 | ORDER that having reviewed the COMPLAINT (ECF No. 1 ) filed herein and the CIVIL COVER SHEET (ECF No. 1 -1), it is hereby ORDERED that the plaintiffs shall file, by July 31, 2020, a Statement of Position explaining why this case is related to the closed cases of (please see Order for additional information.) It is further ORDERED that, by August 13, 2020, the defendants shall file their responses to the plaintiffs' Statement of Position; and the plaintiffs shall file their reply by August 19, 2020. It is so ORDERED. Signed by District Judge Robert E. Payne on 07/21/2020. (walk, ) (Entered: 07/21/2020) |
| 07/21/2020 | 16 | MOTION to Dismiss for Lack of Jurisdiction *and Lack of Venue or, in the Alternative, to Transfer Venue* by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Anthony, David) (Entered: 07/21/2020) |
| 07/21/2020 | 17 | Memorandum in Support re 16 MOTION to Dismiss for Lack of Jurisdiction *and Lack of Venue or, in the Alternative, to Transfer Venue* filed by Harlington-Straker Studio, Inc., |

| | | Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Attachments: # 1 Exhibit A (Declaration of Stringfellow))(Anthony, David) (Entered: 07/21/2020) |
|---|---|---|
| 07/21/2020 | 18 | MOTION to Dismiss for Failure to State a Claim by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Anthony, David) (Entered: 07/21/2020) |
| 07/21/2020 | 19 | Memorandum in Support re 18 MOTION to Dismiss for Failure to State a Claim filed by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Anthony, David) (Entered: 07/21/2020) |
| 07/21/2020 | 20 | ANSWER to Complaint by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P..(Anthony, David) (Entered: 07/21/2020) |
| 07/31/2020 | 21 | Joint MOTION for Extension *of Time to Complete Briefing on Defendants' Motions to Dismiss* by George O. Harrison, Jr.,, Tyrone Henderson, Sr., Robert McBride. (Attachments: # 1 Proposed Order)(Bennett, Leonard) (Entered: 07/31/2020) |
| 07/31/2020 | 22 | Memorandum in Support re 21 Joint MOTION for Extension *of Time to Complete Briefing on Defendants' Motions to Dismiss* filed by George O. Harrison, Jr., Tyrone Henderson, Sr., Robert McBride. (Bennett, Leonard) (Entered: 07/31/2020) |
| 07/31/2020 | 23 | NOTICE by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride re 15 Order,, *Plaintiffs' Statement of Position Regarding Relatedness of Cases* (Attachments: # 1 Exhibit)(Bennett, Leonard) (Entered: 07/31/2020) |
| 08/03/2020 | 24 | ORDER that having reviewed the JOINT MOTION FOR ENLARGEMENT OF TIME TO COMPLETE BRIEFING ON DFENDANTS' MOTION TO DISMISS (ECF No. 21 ), it is hereby ORDERED that the Motion (ECF No. 21) is granted. It is further ORDERED that the Plaintiffs' deadline to respond to the Motion to Transfer and to Dismiss (ECF Nos. 16 , 18 ) is enlarged fourteen days, from August 4, 2020 to August 18, 2020. Defendants' reply deadline is also enlarged fourteen days, from August 24, 2020 to September 7, 2020. It is so ORDERED. Signed by District Judge Robert E. Payne on 08/03/2020. (walk, ) (Entered: 08/03/2020) |
| 08/11/2020 | 25 | AMENDED CLASS ACTION COMPLAINT against All Defendants filed by Tyrone Henderson, Sr., Robert McBride and George O. Harrison, Jr. (Kelly, Kristi). Modified docket entry on 08/12/2020. (walk, ). (Entered: 08/11/2020) |
| 08/12/2020 | 26 | RESPONSE to Motion re 16 MOTION to Dismiss for Lack of Jurisdiction *and Lack of Venue or, in the Alternative, to Transfer Venue* , 18 MOTION to Dismiss for Failure to State a Claim filed by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Bennett, Leonard) (Entered: 08/12/2020) |
| 08/12/2020 | 27 | NOTICE of Appearance by Timothy James St. George on behalf of Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P. (St. George, Timothy) (Entered: 08/12/2020) |
| 08/13/2020 | 28 | Response to 15 Order *Defendants' Response to Plaintiffs' Statement of Position* filed by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Anthony, David). Modified docket entry on 08/13/2020. (walk, ). (Entered: 08/13/2020) |
| 08/17/2020 | 29 | ORDER that Defendant's Motion to Dismiss for Lack of Jurisdiction or Motion to Transfer Venue 16 and Motion to Dismiss Complaint pursuant to Fed. R. Civ. P. 12 (B)(6) 18 are DENIED as moot. It is further ORDERED that defendants shall filed their Answers or any other motions with respect to the Amended Class Action by August 25, 2020. Signed by District Judge Robert E. Payne on 8/17/20. (jtho, ) (Entered: 08/17/2020) |

| 08/18/2020 | 30 | Consent MOTION for Extension *of Time to File Responsive Pleadings to Plaintiffs' Amended Complaint* by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Attachments: # 1 Exhibit 1 (Proposed Order))(Anthony, David) (Entered: 08/18/2020) |
|---|---|---|
| 08/19/2020 | 31 | ORDER that having considered DEFENDANTS' CONSENT MOTION FOR AN EXTENSION OF TIME WITHIN WHICH DEFENDANTS MUST FILE THEIR RESPONSIVE PLEADINGS TO PLAINTIFFS' AMENDED COMPLAINT (ECF No. 30 ), and there being no objection by the plaintiff, it is hereby ORDERED that DEFENDANTS' CONSENT MOTION FOR AN EXTENSION OF TIME WITHIN WHICH DEFENDANTS MUST FILE THEIR RESPONSIVE PLEADINGS TO PLAINTIFFS' AMENDED COMPLAINT (ECF No. 30 ) is granted. It is further ORDERED that the defendants shall file their Answers and any other motions with respect to the Amended Complaint by September 8, 2020. It is so ORDERED. Signed by District Judge Robert E. Payne on 08/19/2020. (walk, ) (Entered: 08/19/2020) |
| 08/19/2020 | 32 | Reply to 28 Response, *Plaintiffs' Reply in Support of Statement of Position Regarding Relatedness of Cases* filed by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Bennett, Leonard) (Entered: 08/19/2020) |
| 09/04/2020 | 33 | MOTION to Dismiss for Lack of Jurisdiction *Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Personal Jurisdiction and Lack of Venue or, in the Alternative, to Transfer Venue* by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (St. George, Timothy) (Entered: 09/04/2020) |
| 09/04/2020 | 34 | Memorandum in Support re 33 MOTION to Dismiss for Lack of Jurisdiction *Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Personal Jurisdiction and Lack of Venue or, in the Alternative, to Transfer Venue* filed by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Attachments: # 1 Exhibit Declaration of Dale Bruce Stringfellow)(St. George, Timothy) (Entered: 09/04/2020) |
| 09/04/2020 | 35 | MOTION to Dismiss for Failure to State a Claim *Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (St. George, Timothy) (Entered: 09/04/2020) |
| 09/04/2020 | 36 | Memorandum in Support re 35 MOTION to Dismiss for Failure to State a Claim *Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* filed by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Attachments: # 1 Exhibit Declaration of Dale Bruce Stringfellow)(St. George, Timothy) (Entered: 09/04/2020) |
| 09/04/2020 | 37 | ANSWER to Complaint *Defendants' Answer to Plaintiffs' Amended Complaint* by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P..(St. George, Timothy) (Entered: 09/04/2020) |
| 09/11/2020 | 38 | Joint MOTION for Extension *of Time to Complete Briefing on Defendant's Motions to Dismiss* by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Attachments: # 1 Proposed Order)(Bennett, Leonard) (Entered: 09/11/2020) |
| 09/11/2020 | 39 | Memorandum in Support re 38 Joint MOTION for Extension *of Time to Complete Briefing on Defendant's Motions to Dismiss* filed by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Bennett, Leonard) (Entered: 09/11/2020) |
| 09/14/2020 | 40 | ORDER that having considered the JOINT MOTION FOR ENLARGEMENT OF TIME TO COMPLETE BRIEFING ON DEFENDANTS' MOTIONS TO DISMISS (ECF No. 38 |

| | | |
|---|---|---|
| | | ), it is hereby ORDERED that the Motion (ECF No. 38 ) is granted. It is further ORDERED that: (1) By October 2, 2020, the plaintiffs shall file their responses to DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND LACK OF VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE (ECF No. 33 ) and DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) (ECF No. 35); and, (2) By October 22, 2020, the defendants shall file their replies in support of their Motions to Dismiss (ECF Nos. 33 and 35 . It is so ORDERED. Signed by District Judge Robert E. Payne on 09/14/2020. (walk, ) (Entered: 09/14/2020) |
| 09/15/2020 | 41 | ORDER that having considered the AMENDED CLASS ACTION COMPLAINT (ECF No. 25 ), the original CIVIL COVER SHEET (ECF No. 1 -1), the PLAINTIFFS' STATEMENT OF POSITION REGARDING RELATEDNESS OF CASES (ECF No. 23 ), the DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF POSITION (ECF No. 28 ), and the PLAINTIFFS' REPLY IN SUPPORT OF STATEMENT OF POSITION REGARDING RELATEDNESS OF CASES (ECF No. 32 ), and finding that there is insufficient connection between this case and the putative related cases to warrant assignment of this case on the basis of relatedness, and considering the plaintiffs' lack of objection to random reassignment, it is hereby ORDERED that this case shall be returned to the Clerk for random reassignment (please see Order for additional information.) It is so ORDERED. Signed by District Judge Robert E. Payne on 09/15/2020. (walk, ) (Entered: 09/15/2020) |
| 09/15/2020 | | Case RANDOMLY REASSIGNED to District Judge Henry E. Hudson re: 41 Order. District Judge Robert E. Payne no longer assigned to the case. (walk, ) (Entered: 09/15/2020) |
| 10/02/2020 | 42 | Memorandum in Opposition re 33 MOTION to Dismiss for Lack of Jurisdiction *Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Personal Jurisdiction and Lack of Venue or, in the Alternative, to Transfer Venue* filed by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Attachments: # 1 Exhibit 1 (Henderson Declaration), # 2 Exhibit 2 (Harrison Declaration), # 3 Exhibit 3 (McBride Declaration))(Bennett, Leonard) (Entered: 10/02/2020) |
| 10/02/2020 | 43 | Memorandum in Opposition re 35 MOTION to Dismiss for Failure to State a Claim *Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* filed by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Attachments: # 1 Exhibit 1 (Bennett Declaration))(Bennett, Leonard) (Entered: 10/02/2020) |
| 10/02/2020 | 44 | MOTION For Leave to Permit Jurisdictional Discovery by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Attachments: # 1 Proposed Order)(Bennett, Leonard) (Entered: 10/02/2020) |
| 10/02/2020 | 45 | Memorandum in Support re 44 MOTION For Leave to Permit Jurisdictional Discovery filed by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Attachments: # 1 Exhibit 1 (Bennett Declaration))(Bennett, Leonard) (Entered: 10/02/2020) |
| 10/02/2020 | 46 | MOTION for Leave to File *Second Amended Complaint* by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Attachments: # 1 Proposed Order)(Bennett, Leonard) (Entered: 10/02/2020) |
| 10/02/2020 | 47 | Memorandum in Support re 46 MOTION for Leave to File *Second Amended Complaint* filed by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Attachments: # 1 Exhibit 1 (Proposed Second Amended Complaint))(Bennett, Leonard) (Entered: 10/02/2020) |

| 10/14/2020 | 48 | SCHEDULING ORDER with Attachment # 1 Pretrial Schedule A - Initial Pretrial Conference set for 11/10/2020 at 10:00 AM before District Judge Henry E. Hudson (rpiz) (Entered: 10/14/2020) |
|---|---|---|
| 10/16/2020 | 49 | Withdrawal of Motion by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P. re 33 MOTION to Dismiss for Lack of Jurisdiction *Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Personal Jurisdiction and Lack of Venue or, in the Alternative, to Transfer Venue* (St. George, Timothy) (Entered: 10/16/2020) |
| 10/16/2020 | 50 | RESPONSE to Motion re 44 MOTION For Leave to Permit Jurisdictional Discovery *(Defendants' Response to Plaintiffs' Motion to Permit Jurisdictional Discovery)* filed by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (St. George, Timothy) (Entered: 10/16/2020) |
| 10/16/2020 | 51 | RESPONSE to Motion re 46 MOTION for Leave to File *Second Amended Complaint (Defendants' Response to Plaintiffs' Motion for Leave to File Second Amended Complaint)* filed by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (St. George, Timothy) (Entered: 10/16/2020) |
| 10/20/2020 | 52 | REPLY to Response to Motion re 44 MOTION For Leave to Permit Jurisdictional Discovery filed by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Bennett, Leonard) (Entered: 10/20/2020) |
| 10/20/2020 | 53 | REPLY to Response to Motion re 46 MOTION for Leave to File *Second Amended Complaint* filed by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Bennett, Leonard) (Entered: 10/20/2020) |
| 10/22/2020 | 54 | Reply to Motion re 35 MOTION to Dismiss for Failure to State a Claim *Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* filed by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (St. George, Timothy) (Entered: 10/22/2020) |
| 10/29/2020 | 55 | ORDER that this matter is before the Court on Plaintiffs' Motion for Leave to File Second Amended Complaint, filed on October 2, 2020 (ECF No. 46 ). Defendants do not oppose the Motion. (ECF No. 51 .) Upon due consideration, and finding it appropriate to do so, the Court hereby GRANTS the Motion. Plaintiffs are DIRECTED to file their Second Amended Complaint. It is so ORDERED. Signed by District Judge Henry E. Hudson on 10/29/2020. (walk, ) (Entered: 10/29/2020) |
| 10/30/2020 | 56 | SECOND AMENDED CLASS ACTION COMPLAINT filed by Tyrone Henderson, Sr., Robert McBride and George O. Harrison, Jr. against Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow and The Source for Public Data, L.P.. (Bennett, Leonard). Modified docket entry on 11/03/2020. (walk, ). (Entered: 10/30/2020) |
| 11/06/2020 | 57 | ANSWER to Complaint *(Defendants' Answer to Plaintiffs' Second Amended Complaint)* by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P..(St. George, Timothy) (Entered: 11/06/2020) |
| 11/09/2020 | 58 | NOTICE of Appearance by Harrison Scott Kelly on behalf of Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P. (Kelly, Harrison) (Entered: 11/09/2020) |
| 11/09/2020 | 59 | NOTICE of Appearance by Amy Leigh Austin on behalf of George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride (Austin, Amy) (Entered: 11/09/2020) |
| 11/10/2020 | | Initial Pretrial Conference held on 11/10/2020 before District Judge Henry E. Hudson (rpiz) (Entered: 11/10/2020) |

| 11/10/2020 | 61 | ORDER (Denying Motions as Moot). THIS MATTER is before the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 33 ) and Motion to Dismiss the Amended Complaint for Failure to State a Claim (ECF No. 35 ) filed on September 4, 2020. Plaintiffs also filed a Motion for Leave to Permit Jurisdiction Discovery (ECF No. 44 ) on October 2, 2020, in response to Defendants' Motion. Defendants moved to withdraw the Motion to Dismiss for Lack of Jurisdiction. After the parties filed the Motions, the Court granted Plaintiffs leave to file a Seconded Amended Complaint, which was subsequently filed on October 30, 2020 (ECF No. 30 ). In light of Plaintiffs filing the Second Amended Complaint, the Motions are DENIED AS MOOT. It is so ORDERED. Signed by Senior United States District Judge Henry E. Hudson on 11/10/2020. (sbea,) (Entered: 11/10/2020) |
|---|---|---|
| 11/10/2020 | 62 | INITIAL PRETRIAL ORDER - Jury Trial set for 6/21/2021 at 9:30 AM in Richmond Courtroom 7000 before District Judge Henry E. Hudson (signed by District Judge Henry E. Hudson on 11/10/2020) (rpiz) (Entered: 11/10/2020) |
| 11/16/2020 | 63 | MOTION for Judgment on the Pleadings *as to Plaintiffs' Second Amended Complaint* by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (St. George, Timothy) (Entered: 11/16/2020) |
| 11/16/2020 | 64 | Memorandum in Support re 63 MOTION for Judgment on the Pleadings *as to Plaintiffs' Second Amended Complaint* filed by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Attachments: # 1 Exhibit 1)(St. George, Timothy) (Entered: 11/16/2020) |
| 11/23/2020 | 65 | Joint MOTION for Extension of Time to File Response/Reply as to 63 MOTION for Judgment on the Pleadings *as to Plaintiffs' Second Amended Complaint* by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Attachments: # 1 Proposed Order) (Bennett, Leonard) (Entered: 11/23/2020) |
| 11/23/2020 | 66 | Memorandum in Support re 65 Joint MOTION for Extension of Time to File Response/Reply as to 63 MOTION for Judgment on the Pleadings *as to Plaintiffs' Second Amended Complaint* filed by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. (Bennett, Leonard) (Entered: 11/23/2020) |
| 11/24/2020 | 67 | ORDER that before the Court is the Parties' Joint Motion for Enlargement of Time to Complete Briefing on Defendants' Motion for Judgment on the Pleadings (ECF 63 ). Having considered the Motion, the applicable law, the record in this case, and the arguments of Counsel, if any, the Court is of the opinion that the Motion should be GRANTED. IT IS HEREBY ORDERED that Plaintiffs' deadline to respond to the Motion for Judgment on the Pleadings (ECF 63 ) is enlarged four days, from November 30, 2020 to December 4, 2020. Defendants' reply deadline is enlarged seven days, from December 10, 2020 to December 17, 2020. Signed by District Judge Henry E. Hudson on 11/24/2020. (walk, ) (Entered: 11/24/2020) |
| 12/04/2020 | 68 | Opposition to 63 MOTION for Judgment on the Pleadings *as to Plaintiffs' Second Amended Complaint* filed by George O. Harrison, Jr., Tyrone Henderson, Sr. and Robert McBride. (Bennett, Leonard). Modified docket entry on 12/07/2020. (walk, ). (Entered: 12/04/2020) |
| 12/17/2020 | 69 | REPLY to Response to Motion re 63 MOTION for Judgment on the Pleadings *as to Plaintiffs' Second Amended Complaint* filed by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (St. George, Timothy) (Entered: 12/17/2020) |
| 12/31/2020 | | Set Hearings as to 63 Motion for Judgment on the Pleadings: Motion Hearing set for 1/5/2021 at 10:00 AM in Richmond Courtroom 7000 before District Judge Henry E. |

| | | |
|---|---|---|
| | | Hudson (rpiz) (Entered: 12/31/2020) |
| 01/04/2021 | | Set/Reset Hearings as to 63 Motion for Judgment on the Pleadings: Motion Hearing reset for 1/5/2021 at 11:00 AM in Richmond Courtroom 7000 before District Judge Henry E. Hudson *(TIME CHANGE ONLY, date remains the same)* (rpiz) (Entered: 01/04/2021) |
| 01/05/2021 | 71 | Minute Entry for proceedings held before District Judge Henry E. Hudson (Court Reporter Harding, OCR): Motion Hearing held on 1/5/2021 re Defendants' 63 Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(C). Argument heard. Matter taken under advisement by the Court; Memorandum Opinion to enter. (rpiz) (Entered: 01/05/2021) |
| 01/07/2021 | 72 | Joint MOTION for Protective Order by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Attachments: # 1 Exhibit 1 (Proposed Stipulated Protective Order))(St. George, Timothy) (Entered: 01/07/2021) |
| 01/08/2021 | 73 | STIPULATED PROTECTIVE ORDER AND NON-WAIVER ORDER. See Order for details. Signed by District Judge Henry E. Hudson on 1/8/2021. (Attachments: # 1 Exhibit A) (jsmi, ) (Entered: 01/08/2021) |
| 01/08/2021 | 74 | TRANSCRIPT of proceedings held on January 5, 2021, before Judge Henry E. Hudson, Court Reporter/Transcriber Krista Liscio Harding, Telephone number 804 916-2296. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 2/8/2021. Redacted Transcript Deadline set for 3/10/2021. Release of Transcript Restriction set for 4/8/2021.(liscio, krista) (Entered: 01/08/2021)** |
| 03/05/2021 | 75 | Joint MOTION to Stay *Pretrial Deadlines* by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (St. George, Timothy) (Entered: 03/05/2021) |
| 03/05/2021 | 76 | Memorandum in Support re 75 Joint MOTION to Stay *Pretrial Deadlines* filed by Harlington-Straker Studio, Inc., Shadowsoft, Inc., Dale Bruce Stringfellow, The Source for Public Data, L.P.. (Attachments: # 1 Exhibit A)(St. George, Timothy) (Entered: 03/05/2021) |
| 03/05/2021 | 77 | ORDER that this matter is before the Court on the parties' Joint Motion to Stay Pretrial Deadlines, filed on March 5, 2021 (ECF No. 75 ). The parties seek a stay of all pretrial deadlines pending this Court's resolution of the Motion for Judgment on the Pleadings (ECF No. 63 ). Upon due consideration, and finding it appropriate to do so, the Court hereby GRANTS the Motion. All pretrial deadlines are STAYED until the entry of the Memorandum Opinion and Order resolving the Motion for Judgment on the Pleadings. It is so ORDERED. Signed by District Judge Henry E. Hudson on 03/05/2021. (walk, ) (Entered: 03/05/2021) |
| 05/19/2021 | 78 | MEMORANDUM OPINION. Signed by District Judge Henry E. Hudson on 05/19/2021. (walk, ) (Entered: 05/19/2021) |
| 05/19/2021 | 79 | ORDER (Granting Defendants' Motion for Judgment on the Pleadings) that this matter is before the Court on Defendants' Motion for Judgment on the Pleadings, filed on November 11, 2020. (ECF No. 63 .) For the reasons set forth in the accompanying Memorandum Opinion, the Motion is GRANTED, and the Second Amended Complaint is DISMISSED |

| | | |
|---|---|---|
| | | WITH PREJUDICE. This case is CLOSED. It is so ORDERED. Signed by District Judge Henry E. Hudson on 05/19/2021. (walk, ) (Entered: 05/19/2021) |
| 06/14/2021 | [80](#) | NOTICE OF APPEAL as to [78](#) Memorandum Opinion, [79](#) Order Dismissing Case, by George O. Harrison, Jr.,, Tyrone Henderson, Sr.,, Robert McBride. Filing fee $ 505, receipt number AVAEDC-7840414. (Bennett, Leonard) (Entered: 06/14/2021) |
| 06/15/2021 | [81](#) | Transmission of Notice of Appeal to US Court of Appeals re [80](#) Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (tjoh, ) (Entered: 06/15/2021) |
| 06/15/2021 | [82](#) | USCA Case Number 21-1678 USCA, REdwards, Case Manager for [80](#) Notice of Appeal filed by Tyrone Henderson, Sr., George O. Harrison, Jr., Robert McBride. (tjoh, ) (Entered: 06/15/2021) |

| | |
|---|---|
| **PACER Service Center** | |
| **Transaction Receipt** | |
| 10/05/2021 10:41:06 | |

| **PACER Login:** | | **Client Code:** | |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 3:20-cv-00294-HEH |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE HENDERSON, SR,
GEORGE O. HARRISON, JR., and
ROBERT MCBRIDE, on behalf of themselves
and others similarly situated,

Plaintiffs,

v.                                                    Case No. 3:20-cv-00294-REP

THE SOURCE FOR PUBLIC DATA, L.P.,
d/b/a PUBLICDATA.COM;
SHADOWSOFT, INC.;
HARLINGTON-STRAKER STUDIO, INC.;
and DALE BRUCE STRINGFELLOW,

Defendants.

## SECOND AMENDED CLASS ACTION COMPLAINT

Pursuant to the Court's directive (ECF 55), the Plaintiffs, Tyrone Henderson, Sr.,

George O. Harrison, Jr., and Robert McBride, on behalf of themselves and proposed classes,

and for their Complaint against Defendants, they state as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs Henderson, Harrison, and McBride have struggled over the last

several years with a game of whack-a-mole, in which each time they apply for a job or face

a background check, they are confronted with results that are inaccurate and prevent them

from moving forward in their lives. They then dispute or try and correct their file before

facing a different background company the next attempt.  This Action is a continuing part of

that saga and alleges claims under the Federal Fair Credit Reporting Act ("FCRA"), 15

U.S.C. §§ 1681a–x for Defendants' furnishing of inaccurate and unauthorized reports and

for failing to disclose information required under the statute.

2.      One of the most prolific consumer reporting companies is "PublicData.com", which cost one or more of the Plaintiffs a job. Each Plaintiff has tried to prevent this from happening to them or continuing to happen, each without success.

3.      Defendants—a consumer reporting agency and its principals—have for years engaged in a systematic and unlawful practice of furnishing consumer reports governed by the 50 year old requirements of the FCRA using a business model intentionally designed to appear as if the reports are not so governed. To accomplish such subterfuge, Defendants created a multiple-tiered business structure of shell entities and paper so they could attempt to avoid their grave responsibilities in assembling and providing consumer reports under the FCRA.

4.      At center stage in Defendants' sham business operation is a shell entity known as The Source for Public Data, L.P. d/b/a PublicData.com ("Public Data"), which sells over 50 million consumer reports per year without a *single* employee, office building, or any assets. Instead, Public Data is operated and controlled by and through Dale Bruce Stringfellow and his wholly owned company, ShadowSoft, Inc., who together purchase, assemble, parse, summarize, and format all of the public records and upload them onto Public Data's internet servers without regard for the accuracy or completeness of the consumer report.

5.      To be clear, the term "public records" does not necessarily mean records that are available-to or may be obtained by the public in general. Rather, public records in this context has a more descrete definition—records that originate within a public entity, such as an arm of government like a courthouse.

6.      It is generally understood that not every court record, for example, can be publicly obtained or viewed without specific need or permission.

7.      And companies like Defendants rarely present to their customers court records as they appear at the courthouse sources. Defendants, like most consumer reporting agencies, reformat and alter the court records into a layout or presentation they believe is more user-friendly.

8.      Neither Stringfellow nor ShadowSoft is Public Data's general partner. Instead, the general partner is another corporation wholly owned by Stringfellow named Harlington-Straker Studio, Inc., which Stringfellow dishonestly claims is the decision-making entity for Public Data. Stringfellow, individually, purports to hold a limited partner interest in Public Data even though he is the president and sole director of Harlington-Straker. In reality, both Public Data and Harlington-Straker are sham entities and all of Public Data's business is conducted through Stringfellow and ShadowSoft, which by design did not receive any interest in Public Data or Harlington-Straker.

9.      Because of Defendants' perceived comfort with the purported legal protections afforded by their sham business structure, Public Data admittedly maintains no policies or procedures whatsoever to ensure that it accurately assembles and provides consumer reports in compliance with the FCRA. Instead, Defendants take the absurd legal position that Public Data is not a consumer reporting agency as defined and regulated by the FCRA.

**JURISDICTION AND VENUE**

10.     This Court has federal question jurisdiction over Plaintiffs' FCRA claims pursuant to 28 U.S.C. § 1331.

11.     Venue is proper because Plaintiffs reside in this District and because most events and all damages suffered by them occurred in this District and Division. Two of the Plaintiffs reside in this District and Division. Further, the various information and databases used by Defendants to compile reports regarding Plaintiffs and Virginia class members are all located here, including the Executive Secretary of the Supreme Court of Virginia, which maintains the records for all Virginia General District Courts and Circuit Court records for thirty-one judicial circuits,   the Virginia Department of Corrections, the Virginia State Corporation Commission, the Virginia Department of Motor Vehicles, Virginia's Treasury Department, and nearly all other public record sources located in this Commonwealth.

12.     Additionally, the FCRA violations Plaintiffs assert took place in the Commonwealth of Virginia. Plaintiffs requested that Defendants provide their consumer files from within Virginia, that request was improperly ignored, injuring Plaintiffs by depriving them of their statutorily mandated consumer disclosures in Virginia.

13.     Defendants also issued an inaccurate consumer report about Plaintiff McBride to an employer in Virginia, which inaccuracies caused McBride to improperly lose out on employment in Virginia.

**PARTIES**

14.     Plaintiff Henderson is a "consumer" as protected and governed by the FCRA, and is a member of the putative § 1681g class defined below. Plaintiff Henderson is a resident of Richmond, Virginia.

15.     Plaintiff Harrison is a "consumer" as protected and governed by the FCRA, and is a member of the putative § 1681g class defined below. Plaintiff Harrison is a resident of Henrico County, Virginia.

16.     Plaintiff McBride is a "consumer" as protected and governed by the FCRA, and is a member of the putative classes defined below. Plaintiff McBride is a resident of Norfolk, Virginia.

17.     Upon information and belief, Public Data is a foreign limited partnership doing business in Virginia. Public Data's principal office is located at 7750 N. MacArthur Boulevard, Suites 120-290, Irving, TX 75063.   At all times relevant hereto, it was a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties. At all times relevant to this case, Public Data was undercapitalized, perpetrating fraud through, and the alternate ego of Stringfellow, ShadowSoft, and Harlington-Straker.

18.     Upon information and belief, ShadowSoft is a foreign corporation doing business in Virginia. ShadowSoft shares a principal office with its alter ego Public Data at 7750 N. MacArthur Boulevard, Suites 120-290, Irving, TX 75063.   At all times relevant hereto, it was a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). ShadowSoft is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers under the guise of Public Data for the purpose of furnishing consumer reports to third parties. At all times relevant to this case, Shadow Soft was undercapitalized, perpetrating fraud through, and the alternative voice of Stringfellow, Public Data, and Harlington-Straker.

19.     Upon information and belief, Harlington-Straker is a foreign corporation incorporated in the State of Texas. Harlington-Straker Studio is the "general partner" and decision-making entity for Public Data and does not engage in any other business outside of

its sham role in Public Data. Harlington-Straker shares a principal office with its alter egos, Public Data and ShadowSoft, at 7750 N. MacArthur Boulevard, Suites 120-290, Irving, TX 75063.  At all times relevant hereto, it was a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information under the guise of Public Data concerning consumers for the purpose of furnishing consumer reports to third parties. At all times relevant to this case, Harlington-Straker was undercapitalized, perpetrating fraud through, and the alternative voice of Stringfellow, Public Data, and ShadowSoft.

20.     Dale Bruce Springfellow is a natural person and "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Stringfellow is the founder and president of Public Data, ShadowSoft, and Harlington-Straker. Stringfellow is the architect and chief executive of the multi-tiered sham business described herein.

21.     Defendants disburse consumer reports to third parties under contract for monetary compensation during the class period and currently.

22.     Defendants operate as a nationwide consumer reporting agency as governed by the FCRA as it assembles public records in reports that contain information that can bear on a consumer's creditworthiness or standing.

23.     Defendants – directed almost exclusively by Defendant Stringfellow – have for many years deliberately availed themselves of the benefits, protections, services and business opportunities in and of the Commonwealth of Virginia.

24.     They have marketed their joint product to Virginia businesses and, upon information belief, they have scores of individuals and businesses from Virginia who have accounts that allow them to access thousands of reports per year. *See, e.g.*, PublicData.com, INDIVIDUAL AND CORPORATE ACCOUNT PLANS, *available at* publicdata.com/prices.html.

25.     And they have marketed their joint product to other businesses when they sought to hire Virginia consumers for jobs in Virginia.

26.     Defendants – Stringfellow and his shell companies – have also set up their business model to regularly and frequently seek out public records from and maintained by the Executive Secretary of the Supreme Court of Virginia, which records are maintained and made available in Richmond, Virginia.

27.     On information and belief, Plaintiffs allege that Defendants have jointly made in excess of $200,000 form the sale of records obtained from the Executive Secretary of the Supreme Court of Virginia.

28.     On information and belief, Plaintiffs allege that Defendants have entered and accessed the records of the Executive Secretary of the Supreme Court of Virginia hundreds of thousands of times.

## FACTS

### *The Pervasive Use of Inaccurate Criminal Background Reports for Employment Decisions*

29.     Regrettably, Plaintiffs' misfortune is not uncommon. The criminal background screening industry exercises staggering power in hiring decisions. Approximately ninety-three percent of employers procure background checks on employees and job applicants.[1]

---

[1] *See* National Consumer Law Center, *Broken Records: How Errors by Criminal Background Checking Companies Harm Workers and Businesses* (April 2012), available at http://www.nclc.org/images/pdf/pr-reprts/broken-records-report.pdf.

30.     There are hundreds, if not thousands, of criminal background screening companies. It is a $2 billion a year industry.[2]

31.     Unlike traditional credit reporting, which is dominated by the Big Three credit reporting agencies (Trans Union, Experian, and Equifax), it is nearly impossible for a consumer to verify that his or her criminal background check will be accurate in advance of the report being furnished to an employer because of the numerous different background screening companies. Thus, consumers are routinely denied jobs on the basis of erroneous or inaccurate criminal history reports.

32.     Beyond the risks raised by the sheer volume of the information and players involved in the industry, the manner in which many companies prepare criminal history reports increases the risk of inaccuracies. Companies often purchase criminal data in bulk and in static form, or access databases that are infrequently updated. Online background check companies sell criminal history reports that contain information that is not current or accurate, such as arrests that result in dismissal or felony charges that are reduced to misdemeanor convictions.

33.     Moreover, few public record sources that are easily accessible provide all personal identifiers for the person associated with a record (*e.g.,* date of birth, social security number, or middle name) which causes records to be matched with the wrong consumer. Background check companies often report these mismatched, inaccurate, or incomplete records without any further corroboration or investigation, and often the companies never consult or obtain the original court record.[3]

---

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot* (April 2014), *available at* http://www.ibisworld.com/industry/background-check-services.html.

[3] *See generally* Nat'l Consumer Law Ctr., *Broken Records*, *supra*, at 21-23.

*Stringfellow Begins ShadowSoft and Public Data*

34.     Stringfellow formed ShadowSoft in 1993 as a corporation specializing in public records database distribution.

35.     During its initial stages, Shadowsoft generated revenues exclusively through the sales of compact discs ("CDs") containing public records it purchased directly from the Department of Transportation in Texas.

36.     Due to the evolution of the Internet in the early 1990's, Stringfellow converted Shadowsoft's CD products to more cost effective and accessible databases on the Internet under the domain name of PublicData.com.

37.     During this time, Stringfellow never registered Public Data with the Texas Secretary of State.

38.     Instead, from 1995 until August 1997, Stringfellow operated ShadowSoft and Public Data as one in the same.

39.     However, in August 1997, Defendants officially incorporated Public Data in the British territory of Anguilla because of laws passed by the Texas legislature specifically to prevent Defendants from posting any information obtained from the Department of Transportation without approval from the individual.

40.     Texas state representative Ruth Jones McClendon sponsored the bill after hearing complaints by individuals regarding their personal information on Public Data's site.[4]

---

[4] RAJIV CHANDRASEKARAN, *Doors Fling Open on Public Records*, Wash. Post, at A1 (Mar. 8, 1998) (available at http://www.washingtonpost.com/wp-srv/frompost/march98/privacy9.htm).

9
JA22

41.     Stringfellow announced the move in an e-mail to Public Data's customers on August 18, 1997. In this e-mail, Stringfellow wrote:

> A law passed by the Texas legislature this year banning the distribution of public data records over the Internet has made finding a merchandiser difficult and has made us re-think our position. I have made the decision that ShadowSoft shall cease operating PublicData.com on August 31, 1997. Because of my own personal belief that keeping public records available to the public in a free society is critical and essential to keeping our country free, ShadowSoft has sold PublicData.com to a company based in Anguilla, British West Indies. The company which is named PublicData.com.ai Ltd. has purchased all of the programs that ShadowSoft developed which gives you access to the information over the Internet.

42.     In the e-mail, Stringfellow also acknowledged the inseparable connection between Public Data and Shadow Soft, writing:

> ShadowSoft is staffed with the best technical people in the industry but we don't have the skills in the area of marketing. It has been our desire all along to simply be the technical and database contractor for someone who wished to run the business of marketing and merchandising PublicData.com.

43.     The August 18, 1997 email was transmitted from Public Data's "webinfo@publicdata," yet authored by Stringfellow as President of ShadowSoft.

44.     This is the very same email account listed today on Public Data's website as "the easiest way to contact" to contact Public Data.

45.     Public Data not only brazenly admitted to its customers in August 1997 that it purportedly split its companies to evade federal law, Public Data's website previously admitted that it moved its operations to avoid the requirements of federal and state law. In particular, the website previously asserted that Public Data was incorporated outside the United States because of the government's agenda against companies "making access to public records easy and inexpensive" and its initiative "to confront those who did so with threats of prosecution and civil penalties."

46. Stringfellow further confirmed the reason for Public Data's move to Anguilla in a deposition on February 13, 2013, where he testified:

> Q. And why – why was it incorporated in Anguilla?
>
> A. The – aforementioned Driver Policy Protection Act, it was either happening or it was in the process of happening legislatively. And we could not get our hands around legally whether driver's license and motor vehicles could legally under certain definitions be on the Internet.

47. Upon information and belief, despite its incorporation in Anguilla, Stringfellow continued to run Public Data through records purchased and assembled by ShadowSoft throughout the United States.

### *Allegations Regarding Defendants' Current Sham Business Structure*

48. After almost seven years in Anguilla, Defendants moved Public Data into the United States in December 2004 and expanded their business model to include other personal information, including criminal and civil records, voting records, and professional license information.

49. In lieu of implementing policies and procedures for complying with the federal and state laws, such as the FCRA, Defendants created their sham business structure to ostensibly avoid legal ramifications to their unlawful business.

50. To that end, Stringfellow formed Harlington-Straker as a Texas corporation on December 22, 2004.

51. On the very next day, Stringfellow officially registered Public Data as a limited partnership with one general partner, Harlington-Straker. Public Data also has three limited partners: Michael Mitchell, Paul Jordan, and Stringfellow.

52.     Harlington-Straker is a closely held corporation owned entirely by Stringfellow and his wife, Pamela Stringfellow. Stringfellow is also the President of Harlington-Straker and its sole officer according to the records of the Texas Secretary of State and his deposition testimony.

53.     According to Stringfellow's deposition testimony, Harlington-Straker "is the decision-making entity for the limited partnership," and does not engage in any other business than its role in Public Data. *See* Stringfellow Dep. 31: 2-7 (Feb. 13, 2013).

54.     Upon information and belief, Harlington-Straker does not hold any assets despite its ownership in Public Data, which sells over fifty million consumer reports per year.

55.     Public Data also does not hold any assets according to the deposition testimony of Stringfellow.

56.     In fact, Public Data does not even have office space in Irving, Texas, or anywhere else throughout the United States.

57.     Moreover, Public Data does not have a single employee, yet generates annual revenue of approximately ten million dollars.

### *Stringfellow, through ShadowSoft, Continues to Control and Operate Public Data*

58.     Public Data is operated by Stringfellow through ShadowSoft, who purchases and assembles the public records and then publishes them on Public Data's server.

59.     By way of example, on December 29, 2008, ShadowSoft entered into the Memorandum of Understanding ("MOU") to acquire driver's license information from the Florida Department of Highway and Motor Vehicles.

60.     The purpose of the MOU was to establish the conditions and terms by which ShadowSoft would obtain new additions, deletions, and changes to driver's licenses within the state of Florida, including the $.01 amount paid by ShadowSoft per transaction.

61.     As part of the MOU, ShadowSoft was required to certify its use of the information as provided by Florida law and the Driver's Privacy Protection Act.

62.     In doing so, Stringfellow, as the President of ShadowSoft, certified that he was "a representative of an organization requesting personal information for one or more records . . . I declare that my organization is qualified to obtain personal information under exception number 4, as listed on the reverse side of this form."[5]

63.     Stringfellow further wrote: "ShadowSoft is a contractor for PublicData.com. ShadowSoft will insure Public Data's and its Customer's DPPA exception declaration compliance. Public Data will be using the provided data under DPPA exception 4 to verify the identity of its Customers."

64.     However, this information was not obtained by ShadowSoft to assist Public Data in verifying the accuracy of personal information submitted by an individual to Public Data.

65.     Instead and representative of thousands of similar transactions, ShadowSoft obtained the information from the MOU for the sole purpose of uploading these records on Public Data's server to sell them to its customers.

66.     ShadowSoft's primary and only business function involves purchasing, collecting, and assembling the information contained on Public Data's servers.

---

[5] Exception #4 states that the information will be used "in the normal course of business by a legitimate business or its agents, employees, or contractors, but only: (a.) [t]o verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors…".

67.    In fact, despite maintaining its own website, the sole function of ShadowSoft's website is to promote the business of Public Data. In particular, the website states:

> ShadowSoft is no longer manufacturing its Public Information CD products. Distributing Public Records information via the Internet is much more cost effective and provides the most current information available.
> …
>
> ShadowCriminal – If you enjoyed this product, you will really like PublicData.com.
>
> ShadowCivil – If you enjoyed this product, you will really like PublicData.com.
>
> ShadowVoter – If you enjoyed this product, you will really like PublicData.com. Unfortunately, PublicData.com does not currently have the ability to print mailing labels, you can contact the Dallas and Tarrant Voter Register and buy a copy of the voter roll on CD.[6]

68.    Thus, ShadowSoft and Stringfellow use the name Public Data as a sham device to disguise Defendants' complete and utter disregard for the FCRA.

69.    Upon information and belief, Public Data does not keep separate books from ShadowSoft and uses funds from ShadowSoft and Stringfellow's accounts to pay its corporate debts. Moreover, upon information and belief, Public Data does not hold separate corporate meetings from Stringfellow and ShadowSoft.

70.    Upon information and belief, Harlington-Straker does not keep separate books from Public Data and uses funds from ShadowSoft and Stringfellow's accounts to pay its corporate debts. Moreover, upon information and belief, Harlington-Straker does not hold separate meetings from Public Data and ShadowSoft.

---

[6] http://www.shadowsoft.com/ShadowCDs.htm (last visited September 4, 2019).

71.     Moreover, Harlington-Straker was ostensibly created to shield Stringfellow, ShadowSoft, and the other limited partners from personal liability for ShadowSoft and Public Data's complete and utter disregard for the FCRA.

72.     In fact, Defendants' own website disclaims: "Please be aware that many US lawmakers have made certain access to Public Records illegal and it is your responsibility to be aware of which Public Records you may view legally."[7]

73.     Public Data, ShadowSoft, and Harlington-Straker all maintain the same principal address, which is a rented mailbox at a UPS Store located at 7750 North Macarthur Boulevard, Suite #120, Irving, Texas 75063-7514.

74.     Upon information and belief, Public Data, ShadowSoft, and Harlington-Straker are also undercapitalized and do not retain any of the revenues generated by Public Data's sale of consumer reports.

75.     Public Data, ShadowSoft, and Harlington-Straker also use the same telephone number of (972) 869-2471.

### *Defendants are a Consumer Reporting Agency Governed by the FCRA*

76.     Because of this multi-tiered business structure that ostensibly shields the two participants with assets (*i.e.*, Stringfellow and ShadowSoft), Public Data altogether ignores the requirements of the FCRA imposed on credit reporting agencies.

77.     Instead, Defendants claim "PublicData.com is not a consumer reporting agency and data provided by PublicData.com does not constitute a credit report as the term is defined in the Fair Credit Reporting Act, 15 U.S.C.A. sec 1681 et seq."[8]

---

[7] http://publicdata.com (last visited August 11, 2020).
[8] http://publicdata.com/DisplayTC.html (last visited September 4, 2019).

78.    Defendants' position disregards the plain language of the FCRA, which defines a "consumer reporting agency" as:

> [A]ny *person*[9] which, *for monetary fees*, dues, or on a cooperative nonprofit basis, *regularly engages* in whole or in part *in the practice of assembling* or evaluating consumer credit information or *other information on consumers for the purpose of furnishing consumer reports to third parties*, and which uses any means or facility *of interstate commerce for the purpose of preparing* or furnishing consumer reports.

15 U.S.C. § 1681a(f) (emphasis added).

79.    As demonstrated above, Defendants encompass the definition of a credit reporting agency because (1) in exchange for compensation; (2) Defendants regularly assemble information on consumers; (3) for the purpose of furnishing consumer reports; and (4) by means of interstate commerce.

80.    As to the first element, there is no dispute that Defendants receive compensation from their customers. In fact, Defendants clearly anticipate businesses to access this information on a regular basis, as it has corporate plans that provide for up to 5,700 lookups a month. *See, e.g.*, Public Data, *PublicData.com Pricing Plains*, available at http://www.publicdata.com/prices.html (last visited September 4, 2019).

81.    Second, Defendants purchase and assemble their data from the "local, state or federal authority or from businesses who purchased the information."[10]

82.    Defendants then parse that information, altering it into an original, proprietary format such that it can more-easily meet what it perceives to be its clients' needs.

---

[9] Person is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

[10] http://www.publicdata.com/info.html (last visited September 4, 2019).

83.    As Public Data notes on its website:

> Advanced Search is finally here! Have you ever had trouble finding a certain individual or business name on PublicData.com because you didn't know the exact format used? Have you ever needed to search on multiple criteria, like NAME and ADDRESS? Advanced Search was created to provide these capabilities (and much more). Enter as much information as you know, and records that match the most information will be at the top of the search results list. Advanced Search allows PublicData.com capabilities similar to popular search engines (i.e. Google, Yahoo, etc). It will take us some time to convert the thousands of databases available on PublicData.com to the new format, but we will be adding Advanced Search to more databases as rapidly as possible.

84.    The reports Defendants create confirm that it manipulates the public-record data it obtains into a different, summarized format for reporting to customers. Instead of providing full details of the criminal-history entries it furnishes, Defendants distill criminal-history information into glib statements such as those it reported for Plaintiff McBride—"POSSESSION OF PARAPHERNALIA," "POSSESS-NOT MARIJUANA," and "POSSESSION-MARIJUANA."

85.    In placing criminal history in their original format for reporting, Defendants strip out or suppress all identifying information relating to the charges; the states, counties, or courts from which they originate; case numbers; dispositions; the originating courts' actual statements of the nature of the charges; and virtually anything else that would confirm that such records originated in a court at all.

86.    Defendants then replace this information with their own internally created summaries of the charges, bereft of any detail, as they did with Plaintiff McBride.

87.    Additionally, Defendants actively curate the records to match – in Defendants' own view – the request information provided by the employer. Defendants' customers do not merely search for specific records, but instead ask a general question: "Are there any criminal convictions anywhere that match this applicant, with this personal identifying information?" Because that information often does not match or does not provide sufficient information to match records, Defendants affirmatively sort, manipulate and infer information to adapt data results to the requests received.

88.     In essence, Defendants re-write the court records into their own, original entries into their reports.

89.     Third, Defendants obtain and assemble the information for the purpose of providing it to third parties, who then obtain and use the information from Defendants' website in order to determine a consumer's eligibility for credit, insurance, or employment.

90.     Defendants have actual knowledge that its customers use the website and Defendants' data for FCRA purposes.

91.     Public Data's website details the variety of information it permits users to view, all of which is parsed and limited rather than simply a snapshot of what appears in the original records:

> From the search results list, each line is clickable, yielding the detail for that item. Within the detail screen, some informational fields may be further clickable to provide additional information. In some cases, addresses are indexed and may be clicked to show other records with matching address criteria with the same database. Each viewed detail screen counts as a Look-up.

92.     Fourth, Defendants utilize multiple means of interstate commence to sell their reports, which are disbursed to prospective employers around the nation. Further, Defendants obtain their public records from vendors, state agencies, and courthouses in all 50 states and then resell this information in all 50 states.

93.     Defendants' attempts to circumvent FCRA governance are also ineffective as the statute prohibits the attempted use of corporate structures, ownership restructuring and comparable legal tricks as a way to avoid being characterized as a consumer reporting agency.  *See, e.g.*, 12 C.F.R. § 1022.140.

### *Defendants Willfully Violate the FCRA*

94.     Defendants are no exception to the industrywide abuses detailed above. For example, there have recently been several cases brought against Defendants for publishing inaccurate and/or incomplete public records and criminal information about consumers who

suffered adverse employment actions. *See, e.g.*, *Horton v. The Source for Public Data, L.P.*, No. 1:14-cv-230 (E.D. Va.) (complaint filed by 2 different individuals subject to Defendants' reports); *Jones* v. *The Source for Public Data, L.P.*, No. 6:15-cv-01637 (M.D. Fla.) (complaint filed by 20 different individuals subject to Defendants' reports).

95.     Based on these cases, as well as government enforcement actions brought by the Consumer Financial Protection Bureau ("CFPB"), Defendants knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the FTC and the CFPB.

96.     Additionally, Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA, including lawsuits filed in Arkansas, Missouri, and Texas.

97.     Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and deprived Plaintiffs and other members of the classes of their rights under the FCRA.

98.     Plaintiffs allege that Defendants' conduct as alleged herein was consistent with their established and systematically executed procedures and policies to willfully disregard their obligations to comply with the FCRA.

99.     For example, PublicData's own website states:

PublicData is a public records disseminator and **is not responsible for any** **inaccuracies in any database**. PublicData will not modify records in any database upon notification of inaccuracies from individuals.

http://publicdata.com/PandP.html (last visited September 4, 2019) (emphasis added).

100.     It further states:

Please do not send *expungement orders*. PublicData has received so many counterfeit expungement documents that our current established policy is to

rely solely on complete database updates from the recording government entity.

http://publicdata.com/faq.html (last visited September 4, 2019).

101.    Defendants' complete disregard for the FCRA is further evidenced by the February 13, 2013 deposition testimony of Stringfellow as the Fed. R. Civ. P. 30(b)(6) corporate representative for Public Data, where he testified Public Data does not have any policies in place designed to specifically comply with the requirements of the FCRA. Specifically, the following exchanged occurred:

> Q. PublicData doesn't have any policies in place designed specifically to comply with the Fair Credit Reporting Act?
>
> A.  That is correct.

Stringfellow Dep. 42:11–14 (Feb. 13, 2013).

102.    In short, Defendants admittedly do not have in place and did not follow any procedure to: (1) ensure that they furnish an accurate and complete status of the public record as required by 15 U.S.C. § 1681k; (2)restrict the furnishing of consumer reports to be used for an employment purpose when the user has not certified to compliance with  15 U.S.C. § 1681b(b)(1); and (3) to provide, upon a consumer's request, a copy of the consumer file, required by 15 U.S.C. § 1681g.

103.    Defendants continue this practice of failing to even attempt to comply with the FCRA despite the clear requirements of the statute and notice from other lawsuits about their failure to comply with its provisions.

104.    Upon information and belief, Defendants do not intend to comply with the FCRA because doing so would drastically increase their operating expenses. Instead, upon

information and belief, Defendants intentionally choose to not comply with the FCRA in order to keep their costs low, which in turn generates substantial profits for Stringfellow.

105.    While Defendants have shown their intent to rely on the immunity provided to Internet-message boards and Facebook, the Communications Decency Act ("CDA"), 47 U.S.C. § 230, there is not a single case applying such immunity to an entity alleged or proven to have been a CRA and governed by the FCRA.

106.    The existence of such arguments certainly would not prohibit a finding that Defendants acted willfully, particularly given the timing of such decisions.

107.    The one court to consider the defense in a context like this one, *Liberi v. Taitz*, No. SACV110485AGAJWX, 2011 WL 13315691, at *10 (C.D. Cal. Oct. 17, 2011), conducted its analysis by first "assum[ing] that the Defendants [some of which were LexisNexis-affiliated entities] are not credit reporting agencies."

108.    The *Liberi* court noted the tension between asserting common-law claims like defamation and those under the FCRA for inaccurate reporting against the immunity the CDA allows:

> If the Plaintiffs allege that the Reed and Intelius Defendants are credit reporting agencies, as in the current FAC, Plaintiffs' claims are largely barred under the FCRA and CCRA. If Plaintiffs amend their pleading and claim that the Reed and Intelius Defendants are *not credit reporting agencies*, their claims are largely barred under the CDA.

*Id.* at *12 (emphasis added).

109.    The *Liberi* court declined to apply the CDA's immunity and grant defendants' motions to dismiss plaintiffs' claims brought pursuant to the FCRA. *Id.*

110.    Along this line of decisions, one of the cases Defendants have cited in their briefing as applying CDA immunity to "publishers of public records and reports like

LexisNexis," *Merritt v. LexisNexis Screening Sols., Inc.*, No. 13-CV-10768, 2013 WL 3242952, at *4 (E.D. Mich. June 26, 2013), was a case in which the plaintiff did not allege any FCRA claims.

111.    That case was decided on a motion to dismiss the complaint of a *pro se* plaintiff who did not file a response to the motion. *Id.* at *1.

112.    These decisions make sense in the larger scheme of Federal legislation. Defendants' arguments for CDA immunity would eliminate application of the FCRA wholesale to virtually any CRA that operates a website. Such a wildly unbalanced and unexpected outcome surely cannot have been in Congress's mind when it enacted the CDA.

### *Factual Allegations Relating to Plaintiffs*

113.    Plaintiff Henderson has suffered a longstanding problem with the background check system wherein consumer reporting agencies – unable to obtain full identifying information with their public records – mixed Henderson with a similarly named stranger in Pennsylvania.  That faux-Henderson has a criminal history.

114.    Repeatedly, Henderson applied for positions and was denied same based on his inaccurate but purported felony history. This has continued even today and even after extensive litigation on the same factual and legal issues in other cases before this Court.

115.    Accordingly, Henderson has tried to prevent and/or correct this recurring problem by contacting major consumer reporting companies before he faces further rejection and embarrassment from an employer.

116.    On or about December 11, 2019 and February 12, 2020, Plaintiff Henderson requested a copy of his full file from Defendants by U.S. Mail. Plaintiff Henderson requested the file because in the past other consumer reporting agencies had reported

inaccurate information about him, resulting in the loss of employment opportunities. Plaintiff Henderson also requested his full file from Defendants in an effort to proactively determine what information was contained in his file and to correct any inaccuracies, to ensure that he would not have problems in the future with securing employment. Plaintiff Henderson is entitled to a copy of his file pursuant to § 1681g. Defendants did not respond to Plaintiff Henderson's request. By failing to comply with Plaintiff Henderson's request, Defendants violated § 1681g.

117.    On or about March 12, 2020, for a third time Plaintiff Henderson requested a copy of his full file from Defendants by U.S. Mail. Defendants did not themselves respond to Plaintiff Henderson's request, but had an attorney write with a statement that Defendants are not governed by the FCRA. The attorney claimed that there was no record regarding Henderson, without any explanation and did not provide any of the information required by § 1681g.

118.    On or about December 19, 2019, Plaintiff Harrison requested a copy of his full file from Defendants by U.S. Mail. Plaintiff Harrison requested the file because in the past other consumer reporting agencies had reported inaccurate or obsolete information about him, resulting in the loss of employment or rental opportunities. Plaintiff Harrison also requested his full file from Defendants in an effort to proactively determine what information was contained in his file and to correct any inaccuracies, in order to ensure that he would not have problems in the future with securing employment or housing. Plaintiff Harrison is entitled to a copy of his file pursuant to § 1681g.  Defendants did not respond to Plaintiff Harrison's request. By failing to comply with Plaintiff Harrison's request, Defendants violated § 1681g.

119. On or about February 26, 2019 and January 24, 2020, Plaintiff McBride requested a copy of his full file from Defendants by U.S. Mail. Plaintiff McBride requested his full file from Defendants in an effort to determine what information was contained in his file and to correct the inaccuracies, in order to ensure that he would not have problems in the future with securing employment. Plaintiff McBride is entitled to a copy of his file pursuant to § 1681g. Defendants did not respond to Plaintiff McBride's request. By failing to comply with Plaintiff McBride's request, Defendants violated § 1681g.

120. In August 2016, Plaintiff McBride applied for a surveyor position to be located in Virginia. As part of the application process, Plaintiff McBride completed a lengthy application over the internet.

121. The job was contingent upon a background check.

122. Plaintiff McBride's potential employer contacted Public Data and paid it for information from its database. Plaintiff McBride's potential employer uses Defendant Public Data's databases to perform background checks on potential employees, like Plaintiff McBride.

123. Defendants furnished the background report to Plaintiff McBride's potential employer.[11]

124. The background report included numerous entries described as Plaintiff McBride's criminal record, suggesting that Plaintiff McBride had been convicted of each of

---

[11] Because Defendants failed to comply with § 1681k, Plaintiff McBride did not learn of Defendants' violation until discovery commenced in his litigation against his potential employer, well after August 7, 2018. Because the FCRA expressly includes a discovery rule—allowing for the filing of a case with "2 years of the date of discovery of the violation"—this case has been timely filed. 15 U.S.C. § 1681p.

the offenses listed.  In fact, the report was inaccurate and incomplete as it failed to indicate that several of the offenses listed had been nolle prossed.

125.    The background report is a consumer report as governed and defined by the FCRA.

126.    Plaintiff McBride's potential employer received and utilized Defendants' report, in whole or in part, to make its decision to deny Plaintiff McBride's employment.

127.    After accessing Plaintiff McBride's consumer report from Public Data, Plaintiff McBride's potential employer denied his application for employment.

128.    Plaintiff McBride never received any communications from the Defendants "at the time" the report was furnished.

129.    Despite providing a report for employment purposes containing criminal conviction information likely to have an adverse effect upon their ability to obtain or maintain employment, Defendants failed to provide notice "at the time" of the fact that the criminal conviction information was being reported by it, together with the name and address of the person(s) to whom such information was being reported.

130.    On information and belief, Plaintiff McBride alleges that Defendants did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of public records information (e.g., the complete record from the Executive Secretary of the Supreme Court of Virginia or the court clerk) immediately before furnishing a report which includes such information. Title 15 U. S.C. § 1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

131.    Defendants' failure to follow reasonable procedures to assure that their report regarding Plaintiff McBride was a substantial factor in the rejection of Plaintiff McBride's employment offer and other related actual harm he suffered.

## CLASS ACTION ALLEGATIONS

132.    Plaintiffs Henderson, Harrison and McBride assert their claim in Count One on behalf of a putative class of Virginia consumers initially defined as (the "§ 1681g Class"):

> All natural persons residing in Virginia who requested a copy of their consumer file from Defendants at any time from the date two years prior to the filing of this Complaint and continuing through the resolution of this case.

> Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

> Plaintiffs Henderson, Harrison and McBride are members of the § 1681g Class.

133.    Plaintiff McBride asserts his claim in Count Two on behalf of a putative class of Virginia consumers initially defined as (the "§ 1681k Class"):

> All natural persons residing in Virginia (a) who were the subject of a report sold by Public Data to a third party, (b) that was furnished for an employment purpose, (c) that contained at least one public record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment (d) within five years preceding the filing of this action and during its pendency, and (e) to whom Defendants did not place in the United States mail postage pre-paid, on the day it furnished any part of the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.

> Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

> Plaintiff McBride is a member of the § 1681k Class.

134.    Plaintiff McBride asserts his claim in Count Three on behalf of a putative

class of Virginia consumers initially defined as follows (the "1681b(b)(1) Class"):

> All natural persons residing in Virginia (a) who were the subject of a report
> sold by Public Data to a third party that contained a derogatory record, (b)
> that was furnished for an employment purpose, (c) without Defendants first
> receiving the certifications required at 15 U.S.C. § 1681b(b)(1) and (d)
> within five years preceding the filing of this action and during its pendency.
>
> Excluded from the class definition are any employees, officers, directors of
> Defendants, any attorney appearing in this case, and any judge assigned to
> hear this action.
>
> Plaintiff McBride is a member of the § 1681b(b)(1) Class.

135.    **Numerosity.** FED. R. CIV. P. 23(a)(1). The Class members are so numerous

that joinder of all is impractical. The names and addresses of the Class members are

identifiable through documents maintained by Defendants, and the Class members may be

notified of the pendency of this action by published and/or mailed notice.

136.    **Existence and Predominance of Common Questions of Law and Fact.**

FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the

Classes. Without limitation, the total focus of the litigation will be Defendants' uniform

conduct and procedures, whether Defendants sent the required notices, when they did so and

whether Defendants acted willfully in their failure to design and implement procedures to

assure compliant delivery and/or timing of these notices and to assure that their records are

accurate. Even the appropriate amount of uniform statutory and/or punitive damages under

15 U.S.C. § 1681n is a common question.

137.    **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the

claims of each Class member. The FCRA violations suffered by Plaintiffs are typical of

those suffered by other putative class members, and Defendants treated the Plaintiffs

consistently with other putative class members in accordance with their standard policies and practices.

138. **Adequacy.** Plaintiffs are adequate representatives of the Classes because their interests coincide with, and are not antagonistic to, the interests of the members of the Classes each seek to represent, each has retained counsel competent and experienced in such litigation, and each intends to prosecute this action vigorously. Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the Classes.

139. **Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3). The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

**COUNT ONE:**
**VIOLATION OF THE FCRA 15 U.S.C. § 1681g**
**(Class Claim)**

140.    Plaintiffs Henderson, Harrison and McBride allege and incorporate by reference the allegations in the preceding paragraphs.

141.    Plaintiffs Henderson, Harrison and McBride each requested a copy of their consumer files from Defendants.

142.    Defendants failed to produce the information they possessed regarding Plaintiffs Henderson, Harrison and McBride and each other member of the § 1681g Class, despite each consumer's valid request for a copy of his or her file pursuant to § 1681g(a). They also failed to provide Plaintiffs Henderson, Harrison and McBride and each other member of the § 1681g Class notice of his or her rights under the FCRA, as required by § 1681g(c)(2).

143.    The conduct, action, and inaction of Defendants was willful, rendering Defendants liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

144.    As a result of Defendants' conduct, Plaintiffs Henderson, Harrison and McBride and the putative class have suffered particularized and concrete injuries, including being robbed of their congressionally mandated right to information to which Congress has deemed consumers entitled. Access to this information is important because (1) it is highly personal in nature, (2) it is maintained and reported by third parties with whom Plaintiffs have no pre-existing relationship, (3) it is ultimately sold to third parties to whom Plaintiffs are applying to employment or credit without Plaintiffs having the opportunity to view it in advance, (4) it is potential determinative information in extremely important interactions –

applications for employment or credit, and (5) it should include a notice of the consumer's substantive rights under applicable federal law.

145.    Having been denied this important information, Plaintiffs Henderson, Harrison and McBride and the putative class were harmed because they did not know what information was circulated about them and were subsequently denied an opportunity to correct inaccurate or obsolete information. As a result, Plaintiffs Henderson, Harrison and McBride were at increased risk to be denied employment.

146.    Plaintiffs Henderson, Harrison and McBride and other members of the Class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

147.    As a result of these FCRA violations, Defendants are liable to Plaintiffs Henderson, Harrison and McBride, and to each Class Member for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorney's fees and costs pursuant to § 1681n.

**COUNT TWO:**
**VIOLATION OF THE FCRA 15 U.S.C. § 1681k(a)**
**(Class Claim)**

148.    Plaintiff McBride alleges and incorporates by reference the allegations in the preceding paragraphs.

149.    Defendants' failure to timely provide the FCRA notice required at 15 U.S.C. § 1681k(a)(1) to Plaintiff McBride and other members of the putative class and the putative subclass violated 15 U.S.C. § 1681k(a)(1).

150.    Defendants did not attempt to comply with any alternate provision of the section and were thus required to comply with the default requirement. To the extent it

claims otherwise, it failed to do so as it did not furnish the complete and up to date public records regarding any class member.

151.    As explained above, the foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff McBride and other putative class members under 15 U.S.C. § 1681k(a)(1).

152.    Plaintiff McBride and the putative class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, and punitive damages, pursuant to 15 U.S.C. § 1681n.

153.    Plaintiff McBride and the putative class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT THREE:**
**VIOLATION OF THE FCRA § 1681b(b)(1)**
**(Class Claim)**

154.    Plaintiff McBride alleges and incorporates by reference the allegations in the preceding paragraphs.

155.    Defendants' intentional and systemic failure to obtain the certifications required at 15 U.S.C. § 1681b(b)(1) before it furnished employment background check information violated § 1681b.

156.    As a result of Defendants' conduct, Plaintiff McBride and the putative class have suffered particularized and concrete injuries, including being robbed of their congressionally mandated right to information to which Congress has deemed consumers entitled. Access to this information is important because (1) it is highly personal in nature, (2) it is maintained and reported by third parts with who Plaintiffs have no pre-existing relationship, (3) it is ultimately sold to third parties to whom Plaintiffs are applying to

employment or credit without Plaintiffs having the opportunity to view it in advance, (4) it is potential determinative information in extremely important interactions – applications for employment or credit, and (5) it should include a notice of the consumer's substantive rights under applicable federal law. They also had a recognized privacy right to restrict the dissemination of public records information about them and suffered concrete harm when they were denied that right.

157.    As explained above, the foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff McBride and other putative class members under 15 U.S.C. § 1681b(b)(1).

158.    Plaintiff McBride and the putative class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, and punitive damages, pursuant to 15 U.S.C. § 1681n.

159.    Plaintiff McBride and the putative class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3)

## COUNT FOUR:
## VIOLATION OF THE FCRA 15 U.S.C. § 1681e(b)
### (Individual Claim)

160.    Plaintiff McBride alleges and incorporates by reference the allegations in the preceding paragraphs.

161.    Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report they furnished regarding Plaintiff McBride.

162.    As a result of this conduct, Plaintiff McBride suffered actual damages, including without limitation, by example only and as described herein on his behalf by

counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress, aggravating an existing mental health condition which resulted in physical symptoms and injuries.

163.    Defendants' violations of 15 U.S.C. § 1681e(b) were willful, rendering Defendants liable pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendants were negligent entitling Plaintiff McBride to recover under 15 U.S.C. § 1681o.

164.    Plaintiff McBride is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, the Plaintiffs demand judgment for actual, statutory and punitive damages against the Defendants on McBride's individual claim; for certification of each putative class pursuant to Fed. R. Civ. P. 23(b); for judgment for statutory and punitive damages against Defendants on each class claim; for attorneys' fees and costs, for pre-judgment and post-judgment at the legal rate, and such other relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the putative classes demand a trial by jury.

**TYRONE HENDERSON, GEORGE O. HARRISON, JR. and ROBERT MCBRIDE,** *on behalf of themselves and others similarly situated*

By Counsel


_____/s/ Leonard A. Bennett_____
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, (VSB #89736)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
E-mail: lenbennett@clalegal.com
E-mail: craig@clalegal.com

Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
**KELLY GUZZO, PLC**
3925 Chain Bridge Rd, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-9285
E-mail: kkelly@kellyguzzo.com
E-mail: aguzzo@kellyguzzo.com

Dale W. Pittman, VSB #15673
**THE LAW OFFICE OF DALE W. PITTMAN, P.C.**
112-A W Tabb Street
Petersburg, VA 23803-3212
Telephone: (804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com

*Counsel for the Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

**TYRONE HENDERSON, SR.,** *et al.***,**

      **Plaintiffs,**

**v.**                                                    **Civil Action No. 3:20-cv-00294-HEH**

**THE SOURCE FOR PUBLIC
DATA, L.P.,** *et al.***,**

      **Defendants.**

## DEFENDANTS' ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants, The Source for Public Data, L.P., d/b/a PublicData.com ("Public Data"), ShadowSoft, Inc. ("ShadowSoft"), Harlington-Straker Studio, Inc. ("Harlington-Straker"), and Dale Bruce Stringfellow ("Stringfellow") (collectively, "Defendants"), submit the following Answer to the Second Amended Complaint (the "Complaint") (Dkt. No. 56) filed by Plaintiffs, Tyrone Henderson, Sr. ("Henderson"), George O. Harrison, Jr. ("Harrison"), and Robert McBride ("McBride") (collectively, "Plaintiffs"). Defendants deny, generally and specifically, any and all allegations in the Complaint not specifically admitted in the paragraphs below. Defendants further state that their investigation of the present matter is ongoing. Accordingly, Defendants reserve the right to amend this Answer. Defendants deny any and all allegations contained in the headings and/or unnumbered paragraphs in the Complaint.

In response to the numbered paragraphs in the Complaint, Defendants state as follows.

## PRELIMINARY STATEMENT

1.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 1, and therefore, deny those allegations on that basis. Defendants admit that Plaintiffs purport to assert claims against Defendants under

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.  Defendants deny that Plaintiffs are entitled to the relief requested in the Complaint.  Defendants further deny that they furnish "consumer reports" or are a "consumer reporting agency" and deny that they are liable to Plaintiffs in any manner.  Defendants admit that no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff Henderson and McBride's respective names and that Public Data informed Plaintiffs Henderson and McBride as such.  Defendants deny that Plaintiff Harrison ever communicated with Public Data.  Defendants deny the remaining allegations of paragraph 1.

2.     Defendants admit that Public Data operates publicdata.com.  Defendants deny the remaining allegations of paragraph 2.

3.     Defendants deny that they are a "consumer reporting agency."  Defendants deny that they furnish "consumer reports" including assembling consumer reports about any specific individual.  Defendants admit that Public Data receives public records from a variety of local, state or federal authorities in an unaltered form that a person would receive when exercising the right to access the public record in accordance with applicable open record laws, including any restriction placed by the government agency on further distribution or disclosure of a public record.  Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants deny the remaining allegations of paragraph 3.

4.     Defendants admit that Public Data does not have any employees and that services are performed for it by independent contractors.  Defendants admit that ShadowSoft retrieves public records in accordance with applicable open record laws and provides Public Data available

access to those public records.  Defendants deny that they furnish "consumer reports" and deny that they "assemble, parse, summarize, and format" consumer reports about any specific individual.  Defendants deny the remaining allegations of paragraph 4.

5.      Defendants state that no response to the allegations of paragraph 5 is necessary as they allege only characterizations of terms.  To the extent a response is required, Defendants deny the allegations of paragraph 5.

6.      Defendants state that no response to the allegations of paragraph 6 is necessary because the allegations purpose to provide "general knowledge" that is not related to any actions performed by Defendants.

7.      Defendants deny the allegations of paragraph 7.

8.      Defendants admit that Mr. Stringfellow and ShadowSoft are not the general partners of Public Data, that Harlington-Straker is the general partner of Public Data, that Mr. Stringfellow holds a limited partnership interest in Public Data, and that Mr. Stringfellow is the President of Harlington-Straker.  Defendants deny the remaining allegations of paragraph 8.

9.      Defendants admit that Public Data is not a "consumer reporting agency" and does not transmit "consumer reports."  Defendants admit that Public Data receives public records from a variety of local, state or federal authorities in an unaltered form that a person would receive when exercising the right to access the public record in accordance with applicable open record laws, including any restriction placed by the government agency on further distribution or disclosure of a public record.  Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants deny the remaining allegations of paragraph 9.

JA50

## JURISDICTION AND VENUE

10.     Defendants state that no response to the allegations of paragraph 10 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants admit that Plaintiffs have asserted claims under the federal Fair Credit Reporting Act ("FCRA") but deny that Plaintiffs are entitled to any relief from Defendants.

11.     Defendants deny that the Richmond Division of the Eastern District of Virginia is a proper venue for each of the claims alleged in Plaintiffs' Complaint, including for the reasons set forth in its pending motion to dismiss for lack of improper venue.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of whether Plaintiff Henderson and Plaintiff Harrison reside in the Richmond Division of the Eastern District of Virginia, and, therefore, deny those allegations on that basis.  Defendants deny that they "compile [consumer] reports" on specific consumers.  Defendants admit that Public Data receives public records from a variety of local, state or federal authorities (including in Virginia) in an unaltered form that a person would receive when exercising the right to access the public record in accordance with applicable open record laws, including any restriction placed by the government agency on further distribution or disclosure of a public record.  Defendants deny the remaining allegations of paragraph 11.

12.     Defendants admit that Plaintiff Henderson requested information from Public Data via U.S. Mail on or about March 12, 2020.  Defendants admit that Plaintiff McBride requested information from Public Data via U.S. Mail on or about and January 24, 2020.  Defendants deny that Plaintiff Harrison requested information from any of the Defendants.  Defendants deny the remaining allegations of paragraph 12.

13.     Defendants deny the allegations of paragraph 13.

**PARTIES**

14.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 and, therefore, deny those allegations on that basis. To the extent paragraph 14 purports to allege legal conclusions, no response to those allegations is necessary.  Defendants deny the remaining allegations of paragraph 14.

15.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 and, therefore, deny those allegations on that basis. To the extent paragraph 15 purports to allege legal conclusions, no response to those allegations is necessary.  Defendants deny the remaining allegations of paragraph 15.

16.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 and, therefore, deny those allegations on that basis. To the extent paragraph 16 purports to allege legal conclusions, no response to those allegations is necessary.  Defendants deny the remaining allegations of paragraph 16.

17.     Defendants admit that Public Data is a limited partnership organized under the laws of the State of Texas, and that its principal mailing address is located at 7750 N. MacArthur Blvd., Irving, Texas 75063.  Defendants deny that Public Data is a "consumer reporting agency." Defendants deny the remaining allegations of paragraph 17.

18.     Defendants admit that ShadowSoft is a corporation organized under the laws of the State of Texas, and that its principal mailing address is located at 7750 N. MacArthur Blvd., Irving, Texas 75063.  Defendants deny that ShadowSoft is a "consumer reporting agency."  Defendants deny the remaining allegations of paragraph 18.

19.     Defendants admit that Harlington-Straker is a corporation organized under the laws of the State of Texas, and that its principal mailing address is located at 7750 N. MacArthur Blvd.,

Irving, Texas 75063.  Defendants deny that Harlington-Straker is a "consumer reporting agency."
Defendants deny the remaining allegations of paragraph 19.

20.     Defendants admit that Bruce Stringfellow is a natural person and that he is the
President of ShadowSoft and Harlington-Straker.  Defendants deny the remaining allegations of
paragraph 20.

21.     Defendants state that no response to the allegations of paragraph 21 is necessary as
they allege only legal conclusions.  To the extent a response is required, Defendants deny the
allegations of paragraph 21.

22.     Defendants state that no response to the allegations of paragraph 22 is necessary as
they allege only legal conclusions.  To the extent a response is required, Defendants deny the
allegations of paragraph 22.

23.     Defendants state that no response to the allegations of paragraph 23 is necessary as
they allege only legal conclusions.  To the extent a response is required, Defendants deny the
allegations of paragraph 23.

24.     The allegations in paragraph 24 paraphrase or characterize the contents of a written
document and/or webpage.  Defendants deny any allegations to the extent they are inconsistent
with the document and/or webpage.  Defendants deny the remaining allegations of paragraph 24.

25.     Defendants deny the allegations of paragraph 25.

26.     Defendants deny the allegations of paragraph 26.

27.     Defendants deny the allegations of paragraph 27.

28.     Defendants admit that ShadowSoft retrieves public records in accordance with
applicable open record laws and provides Public Data available access to those public records.
Defendants deny the remaining allegations of paragraph 28.

29.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 and, therefore, deny those allegations on that basis. The remaining allegations in paragraph 29 paraphrase or characterize the contents of a written document.   Defendants deny those allegations to the extent they are inconsistent with the document.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 and, therefore, deny those allegations on that basis. The remaining allegations in paragraph 30 paraphrase or characterize the contents of a written document.   Defendants deny those allegations to the extent they are inconsistent with the document.

31.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 and, therefore, deny those allegations on that basis.

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 and, therefore, deny those allegations on that basis.

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 and, therefore, deny those allegations on that basis. The allegations in paragraph 33 paraphrase or characterize the contents of a written document. Defendants deny any allegations to the extent they are inconsistent with the document.

34.     Defendants admit that Stringfellow formed ShadowSoft in 1993.  Defendants admit that ShadowSoft retrieves public records in accordance with applicable open record laws and provides Public Data available access to those public records.  Defendants deny that ShadowSoft is a consumer reporting agency.  Defendants deny the remaining allegations of paragraph 34.

35.     Defendants deny the allegations of paragraph 35.

36.     Defendants deny the allegations of paragraph 36.

37.     Defendants deny the allegations of paragraph 37.

38.     Defendants deny the allegations of paragraph 38.

39.     Defendants admit that Public Data was incorporated in Anguilla in 1997. Defendants admit that Public Data receives public records from a variety of local, state or federal authorities in an unaltered form that a person would receive when exercising the right to access the public record in accordance with applicable open record laws, including any restriction placed by the government agency on further distribution or disclosure of a public record.  Defendants deny that Public Data was incorporated in Anguilla to avoid the application of any state or federal law.  Defendants deny the remaining allegations of paragraph 39.

40.     The allegations in paragraph 40 paraphrase or characterize the contents of a written document.  Defendants deny any allegations to the extent they are inconsistent with the document. Defendants deny the remaining allegations or paragraph 40.

41.     The allegations in paragraph 41 paraphrase or characterize the contents of a written document.  Defendants deny any allegations to the extent they are inconsistent with the document. Defendants deny the remaining allegations or paragraph 41.

42.     The allegations in paragraph 42 paraphrase or characterize the contents of a written document.  Defendants deny any allegations to the extent they are inconsistent with the document. Defendants deny the remaining allegations or paragraph 42.

43.     The allegations in paragraph 43 paraphrase or characterize the contents of a written document.  Defendants deny any allegations to the extent they are inconsistent with the document. Defendants deny the remaining allegations of paragraph 43.

44.     The allegations in paragraph 44 paraphrase or characterize the contents of a written document.  Defendants deny any allegations to the extent they are inconsistent with the document. Defendants deny the remaining allegations of paragraph 44.

45.     The allegations in paragraph 45 paraphrase or characterize the contents of a written document and/or webpage.  Defendants deny any allegations to the extent they are inconsistent with the document and/or webpage.  Defendants specifically deny any allegations of "avoiding" federal or state law.  Defendants admit that Public Data receives public records from a variety of local, state or federal authorities in an unaltered form that a person would receive when exercising the right to access the public record in accordance with applicable open record laws, including any restriction placed by the government agency on further distribution or disclosure of a public record. Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants deny the remaining allegations or paragraph 45.

46.     Defendants admit that D. Bruce Stringfellow offered deposition testimony on February 13, 2013, in an action styled *Wilson v. The Source for Public Data, L.P.* (S.D. Texas, Case No. 4:12-cv-00185), and state that any certified copy of such deposition transcript speaks for itself.  Defendants deny any allegations to the extent that are inconsistent with that written document.  Defendants admit that Public Data receives public records from a variety of local, state or federal authorities in an unaltered form that a person would receive when exercising the right to access the public record in accordance with applicable open record laws, including any restriction placed by the government agency on further distribution or disclosure of a public record.

JA56

Defendants deny that Public Data was incorporated in Anguilla to evade any state or federal law. Defendants deny the remaining allegations of paragraph 46.

47.     Public Data admits that it contracts with ShadowSoft to obtain public records that are mandated by law to be made available to all citizens by various governmental agencies. ShadowSoft admits that it retrieves public records from various governmental record custodians across the United States and then stores those records in the form in which they were received. Defendants deny the remaining allegations of paragraph 47.

48.     Public Data admits that it is a limited partnership established under the laws of the State of Texas.  Public Data admits that it contracts with ShadowSoft to obtain public records that are mandated by law to be made available to all citizens by various governmental agencies. ShadowSoft admits that it retrieves public records from various governmental record custodians across the United States and then stores those records in the form in which they were received. Defendants deny the remaining allegations of paragraph 48.

49.     Defendants deny the allegations of paragraph 49.

50.     Defendants admit that Harlington-Straker was incorporated in Texas on December 22, 2004.

51.     Defendants admit that Public Data was registered as a limited partnership on December 23, 2004, and that its general partner is Harlington-Straker, and that its limited partners are Michael Mitchell, Paul Jordan, and Bruce Stringfellow.

52.     Defendants admit that Harlington-Straker is a corporation owned by Mr. Stringfellow and his wife, and that Mr. Stringfellow is the President of Harlington-Straker.

53.     Defendants admit that D. Bruce Stringfellow offered deposition testimony on February 13, 2013, in an action styled *Wilson v. The Source for Public Data, L.P.* (S.D. Texas,

Case No. 4:12-cv-00185), and state that any certified copy of such deposition transcript speaks for itself.   Defendants deny any allegations to the extent that are inconsistent with that written document.

54.     Defendants deny the allegations of paragraph 54.

55.     Defendants deny the allegations of paragraph 55.

56.     Defendants deny the allegations of paragraph 56.

57.     Defendants admit that Public Data does not have any employees and that services are performed for it by independent contractors.   Defendants deny the remaining allegations of paragraph 57.

58.     Public Data admits that it contracts with ShadowSoft to obtain public records that are mandated by law to be made available to all citizens by various governmental agencies. ShadowSoft admits that it retrieves public records from various governmental record custodians across the United States and then stores those records in the form in which they were received. Defendants deny the remaining allegations of paragraph 58.

59.     The allegations in paragraph 59 paraphrase or characterize the contents of a written document.   Defendants deny those allegations to the extent they are inconsistent with the document.  Defendants deny the remaining allegations of paragraph 59.

60.     The allegations in paragraph 60 paraphrase or characterize the contents of a written document.   Defendants deny those allegations to the extent they are inconsistent with the document.  Defendants deny the remaining allegations of paragraph 60.

61.     The allegations in paragraph 61 paraphrase or characterize the contents of a written document.   Defendants deny those allegations to the extent they are inconsistent with the document.  Defendants deny the remaining allegations of paragraph 61.

62.     The allegations in paragraph 62 paraphrase or characterize the contents of a written document.  Defendants deny those allegations to the extent they are inconsistent with the document.  Defendants deny the remaining allegations of paragraph 62.

63.     The allegations in paragraph 63 paraphrase or characterize the contents of a written document.  Defendants deny those allegations to the extent they are inconsistent with the document.  Defendants deny the remaining allegations of paragraph 63.

64.     Defendants deny the allegations of paragraph 64.

65.     The allegations in paragraph 65 paraphrase or characterize the contents of a written document.  Defendants deny those allegations to the extent they are inconsistent with the document.  Defendants deny the remaining allegations of paragraph 65.

66.     Public Data admits that it contracts with ShadowSoft to obtain public records that are mandated by law to be made available to all citizens by various governmental agencies. ShadowSoft admits that it retrieves public records from various governmental record custodians across the United States and then stores those records in the form in which they were received. Defendants deny the remaining allegations of paragraph 66.

67.     The allegations in paragraph 67 paraphrase or characterize the contents of a written document.  Defendants deny any allegations to the extent they are inconsistent with the document. Defendants deny the remaining allegations of paragraph 67.

68.     Defendants deny the allegations of paragraph 68.

69.     Defendants deny the allegations of paragraph 69.

70.     Defendants deny the allegations of paragraph 70.

71.     Defendants deny the allegations of paragraph 71.

72.     The allegations in paragraph 72 paraphrase or characterize the contents of a written document and/or webpage.  Defendants deny any allegations to the extent they are inconsistent with the document and/or webpage.  Defendants deny the remaining allegations of paragraph 72.

73.     Defendants admit that Public Data, ShadowSoft, and Harlington-Straker all maintain the same principal mailing address of 7750 North Macarthur Boulevard, Irving, Texas 75063-7514.  Defendants deny the remaining allegations of paragraph 73.

74.     Defendants deny the allegations of paragraph 74.

75.     Defendants deny the allegations of paragraph 75.

76.     Defendants admit that Public Data is not a "consumer reporting agency" and does not generate "consumer reports" and, as such, the FCRA provisions at issue in this case do not apply to it and the business structure of Defendants.  Defendants deny the remaining allegations of paragraph 76.

77.     The allegations in paragraph 77 paraphrase or characterize the contents of a written document and/or webpage.  Defendants deny any allegations to the extent they are inconsistent with the document and/or webpage.  Defendants deny the remaining allegations of paragraph 77.

78.     The allegations in paragraph 78 paraphrase or characterize the contents of a written document.  Defendants deny any allegations to the extent they are inconsistent with the written document.  Defendants deny the remaining allegations of paragraph 78.

79.     Defendants state that no response to the allegations of paragraph 79 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the allegations of paragraph 79.

80.     The allegations in paragraph 80 paraphrase or characterize the contents of a written document and/or webpage.  Defendants deny any allegations to the extent they are inconsistent with the document and/or webpage.  Defendants deny the remaining allegations of paragraph 80.

81.     Public Data admits that it contracts with ShadowSoft to obtain public records that are mandated by law to be made available to all citizens by various governmental agencies. ShadowSoft admits that it retrieves public records from various governmental record custodians across the United States and then stores those records in the form in which they were received. The allegations in paragraph 81 also paraphrase or characterize the contents of a written document and/or webpage.  Defendants deny any allegations to the extent they are inconsistent with the document and/or webpage.  Defendants deny the remaining allegations of paragraph 81.

82.     Defendants deny the allegations of paragraph 82.

83.     The allegations in paragraph 83 paraphrase or characterize the contents of a written document and/or webpage.  Defendants deny any allegations to the extent they are inconsistent with the document and/or webpage.  Defendants deny the remaining allegations of paragraph 83.

84.     Defendants deny the allegations of paragraph 84.

85.     Defendants deny the allegations of paragraph 85.

86.     Defendants deny the allegations of paragraph 86.

87.     Defendants deny the allegations of paragraph 87.

88.     Defendants deny the allegations of paragraph 88.

89.     Defendants admit that Public Data receives public records from a variety of local, state or federal authorities in an unaltered form that a person would receive when exercising the right to access the public record in accordance with applicable open record laws, including any restriction placed by the government agency on further distribution or disclosure of a public record.

Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants deny the remaining allegations of paragraph 89.

90.     Defendants deny the allegations of paragraph 90.

91.     The allegations in paragraph 91 paraphrase or characterize the contents of a written document and/or webpage.  Defendants deny any allegations to the extent they are inconsistent with the document and/or webpage.  Defendants deny the remaining allegations of paragraph 91.

92.     Defendants admit that Public Data receives public records from a variety of local, state or federal authorities in an unaltered form that a person would receive when exercising the right to access the public record in accordance with applicable open record laws, including any restriction placed by the government agency on further distribution or disclosure of a public record. Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants deny the remaining allegations of paragraph 92.

93.     Defendants deny that they have attempted to "circumvent" the FCRA, or that Public Data is a "consumer reporting agency" that transmits "consumer reports."  Defendants deny that Public Data "maintains files on consumers on a nationwide basis," such that the provisions of 15 U.S.C. § 1681x would apply to its business.  Defendants deny the remaining allegations of paragraph 93.

94.     The allegations in paragraph 94 paraphrase or characterize the contents of a written documents.  Defendants deny any allegations to the extent they are inconsistent with the

documents.  Defendants deny that any of them have been the subject of any judgment or finding of liability in the identified cases or that any of the identified courts held that the FCRA applied to Public Data.  Public Data further admits that it has previously been granted judgment on claims that it violated the FCRA on the basis that it was not a "consumer reporting agency" and that it did not offer "consumer reports."  *See Wilson v. The Source for Public Data, L.P.*, No. 4:12cv185 (S.D. Tx. 2013) (Dkt. No. 36).  Defendants deny the remaining allegations of paragraph 94.

95.    Defendants deny the allegations of paragraph 95.

96.    Defendants deny the allegations of paragraph 96.

97.    Defendants deny the allegations of paragraph 97.

98.    Defendants deny the allegations of paragraph 98.

99.    The allegations in paragraph 99 paraphrase or characterize the contents of a written document and/or webpage.  Defendants deny any allegations to the extent they are inconsistent with the document and/or webpage.  Defendants deny the remaining allegations of paragraph 99.

100.    The allegations in paragraph 100 paraphrase or characterize the contents of a written document and/or webpage.  Defendants deny any allegations to the extent they are inconsistent with the document and/or webpage.  Defendants deny the remaining allegations of paragraph 100.

101.    Defendants admit that D. Bruce Stringfellow offered deposition testimony on February 13, 2013, in an action styled *Wilson v. The Source for Public Data, L.P.* (S.D. Texas, Case No. 4:12-cv-00185), and state that any certified copy of such deposition transcript speaks for itself.  Defendants deny any allegations to the extent they are inconsistent with the document.

102.    Defendants admit that whether they "qualif[y] as a CRA turns in the first instance on whether its subjective purpose in assembling information concerning consumers is to furnish

16

**JA63**

consumer reports to third parties." *Kidd v. Thomson Reuters Corp.*, 299 F. Supp. 3d 400, 404 (S.D.N.Y. 2017), *aff'd*, 925 F.3d 99 (2d Cir. 2019).  Defendants admit that the FCRA "applies only to a person or entity that regularly assembles consumer information with a particular purpose or subjective intention – namely, of providing it to third parties for use (actual or expected) in connection with an FCRA-regulated end, such as employment eligibility."  *Id.*; *see id.* at 103 (holding that to qualify as a consumer reporting agency under the FCRA, "an entity must specifically intend to furnish a 'consumer report'").  Defendants deny that they are a "consumer reporting agency" and deny that they furnish "consumer reports."  Defendants admit that Public Data receives public records from a variety of local, state or federal authorities in an unaltered form that a person would receive when exercising the right to access the public record in accordance with applicable open record laws, including any restriction placed by the government agency on further distribution or disclosure of a public record.  Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants admit that no certification of compliance with § 1681b(b)(1) is required by the users of Public Data because Public Data does not transmit "consumer reports" for "employment purposes.".  Defendants deny the remaining allegations of paragraph 102.

103.    Defendants deny the allegations of paragraph 103.

104.    Defendants deny the allegations of paragraph 104.

105.    Defendants state that no response to the allegations of paragraph 105 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the allegations of paragraph 105.

106.    Defendants state that no response to the allegations of paragraph 106 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the allegations of paragraph 106.

107.    The allegations in paragraph 107 paraphrase or characterize the contents of a judicial decision.  The court decision speaks for itself and Defendants deny any allegations to the extent they are inconsistent with the court decision.

108.    The allegations in paragraph 108 paraphrase or characterize the contents of a judicial decision.  The court decision speaks for itself and Defendants deny any allegations to the extent they are inconsistent with the court decision.

109.    The allegations in paragraph 109 paraphrase or characterize the contents of a judicial decision.  The court decision speaks for itself and Defendants deny any allegations to the extent they are inconsistent with the court decision.

110.    The allegations in paragraph 110 paraphrase or characterize the contents of a judicial decision.  The court decision speaks for itself and Defendants deny any allegations to the extent they are inconsistent with the court decision.

111.    The allegations in paragraph 111 paraphrase or characterize the contents of a judicial decision.  The court decision speaks for itself and Defendants deny any allegations to the extent they are inconsistent with the court decision.

112.    Defendants state that no response to the allegations of paragraph 112 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the allegations of paragraph 112.

113.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 113 and, therefore, deny those allegations on that basis.

114.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 114 and, therefore, deny those allegations on that basis.

115.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 115 and, therefore, deny those allegations on that basis.

116.    Defendants admit that Public Data is not a "consumer reporting agency" and does not transmit "consumer reports" and, as such, the FCRA does not apply to it.  Defendants admit that Public Data does not maintain "files" on individuals.  Defendants admit that Public Data receives public records from a variety of local, state or federal authorities in an unaltered form that a person would receive when exercising the right to access the public record in accordance with applicable open record laws, including any restriction placed by the government agency on further distribution or disclosure of a public record.  Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants deny that Plaintiff Henderson requested information on or about December 11, 2019.  Defendants deny that Public Data did not respond to Plaintiff Henderson.  Defendants deny the remaining allegations of paragraph 116 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

117.    Defendants admit that Plaintiff Henderson requested information from Public Data via U.S. Mail on or about March 12, 2020.  Defendants admit that, on March 23, 2020, Public Data responded to Plaintiff Henderson by a one-page letter indicating: (a) that Public Data "is not a 'consumer reporting agency' subject to the Fair Credit Reporting Act"; (b) "Public Data provides the public with affordable access to public records.  It does not control the content of those records, and it does not match records to any specific consumer.  As a result, it does not have a 'file' [or

report] on you"; and (c) no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff Henderson's name.  Defendants deny the remaining allegations of paragraph 117.

118.     Defendants deny that Plaintiff Harrison requested information from any of the Defendants on or about December 19, 2019.  Defendants deny the remaining allegations of paragraph 118.

119.     Defendants deny that Plaintiff McBride requested information from the Defendants on or about February 26, 2019.  Defendants admit that Plaintiff McBride requested information from Public Data via U.S. Mail on or about and January 24, 2020.  Defendants admit that, on March 27, 2020, Public data responded to Plaintiff McBride by a one-page letter indicating: (a) that Public Data "is not a 'consumer reporting agency' subject to the Fair Credit Reporting Act"; (b) "Public Data provides the public with affordable access to public records.  It does not control the content of those records, and it does not match records to any specific consumer.  As a result, it does not have a 'file' [or report] on you"; and (c) no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff McBride's name. Defendants admit that on April 7, 2020, the letter was returned by the United States Postal Service indicating "return to sender, insufficient address, unable to forward."   Defendants deny the remaining allegations of paragraph 119.

120.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 120 and, therefore, deny those allegations on that basis.

121.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 121 and, therefore, deny those allegations on that basis.

122.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 122 and, therefore, deny those allegations on that basis.

123.     Defendants deny providing in response to a search initiated by any customer located in Virginia any "background report" on Plaintiff McBride.  Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants admit that no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff McBride's name.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 123 and, therefore, deny those allegations on that basis.

124.     Defendants deny providing in response to a search initiated by any customer located in Virginia any "background report" on Plaintiff McBride.  Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants admit that no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff McBride's name.  Defendants deny the remaining allegations of paragraph 124.

125.     Defendants state that no response to the allegations of paragraph 96 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the allegations of paragraph 125.

126.     Defendants deny providing in response to a search initiated by any customer located in Virginia any "report" on Plaintiff McBride.  Defendants admit that Public Data identifies all

available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants admit that no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff McBride's name.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 126 and, therefore, deny those allegations on that basis.

127.    Defendants deny providing in response to a search initiated by any customer located in Virginia any "report" on Plaintiff McBride.  Defendants admit that Public Data does not transmit "consumer reports."  Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants admit that no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff McBride's name.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 127 and, therefore, deny those allegations on that basis.

128.    Defendants deny providing in response to a search initiated by any customer located in Virginia any "report" on Plaintiff McBride.  Defendants admit that Public Data does not transmit "consumer reports."  Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants admit that no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff McBride's name.  Defendants admit that Public Data did not

communicate with Plaintiff McBride prior to March 27, 2020 and deny that Public Data had any legal obligation to do so.  Defendants deny the remaining allegations of paragraph 128.

129.    Defendants deny providing in response to a search initiated by any customer located in Virginia any "report" on Plaintiff McBride.  Defendants admit that Public Data does not transmit "consumer reports."  Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants admit that no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff McBride's name.  Defendants admit that Public Data did not communicate with Plaintiff McBride prior to March 27, 2020 and deny that Public Data had any legal obligation to do so.  Defendants deny the remaining allegations of paragraph 129.

130.    Defendants deny providing in response to a search initiated by any customer located in Virginia any "report" on Plaintiff McBride.  Defendants admit that Public Data does not transmit "consumer reports."  Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear exactly as they would if obtained directly from the applicable government agency.  Defendants admit that no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff McBride's name.  Defendants deny the remaining allegations of paragraph 130.

131.    Defendants deny providing in response to a search initiated by any customer located in Virginia any "report" on Plaintiff McBride.  Defendants admit that Public Data does not transmit "consumer reports."  Defendants admit that Public Data identifies all available public records that correspond to the search criteria submitted by the user, and that the identified records appear

exactly as they would if obtained directly from the applicable government agency.  Defendants admit that no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff McBride's name.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 131 and, therefore, deny those allegations on that basis.

132.    Defendants admit that Plaintiffs purport to bring this action on behalf of a class of Virginia residents for alleged violations of the FCRA.  The FCRA does not apply to Defendants as Defendants deny that they are a "consumer reporting agency" and the public record at issue is not a "consumer report."  Defendants state that no response to the remaining allegations of paragraph 132 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the factual allegations of paragraph 132.

133.    Defendants admit that Plaintiffs purport to bring this action on behalf of a class of Virginia residents for alleged violations of the FCRA.  The FCRA does not apply to Defendants as Defendants deny that they are a "consumer reporting agency" and the public record at issue is not a "consumer report."  Defendants state that no response to the remaining allegations of paragraph 133 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the factual allegations of paragraph 133.

134.    Defendants admit that Plaintiffs purport to bring this action on behalf of a class of Virginia residents for alleged violations of the FCRA.  The FCRA does not apply to Defendants as Defendants deny that they are a "consumer reporting agency" and the public record at issue is not a "consumer report."  Defendants state that no response to the remaining allegations of paragraph 135 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the factual allegations of paragraph 134.

135.    Defendants state that no response to the remaining allegations of paragraph 135 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the factual allegations of paragraph 135.

136.    Defendants state that no response to the remaining allegations of paragraph 136 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the factual allegations of paragraph 136.

137.    Defendants state that no response to the remaining allegations of paragraph 137 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the factual allegations of paragraph 137.

138.    Defendants state that no response to the remaining allegations of paragraph 138 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the factual allegations of paragraph 138.

139.    Defendants state that no response to the remaining allegations of paragraph 139 is necessary as they allege only legal conclusions.  To the extent a response is required, Defendants deny the factual allegations of paragraph 139.

### **CLAIM ONE:  ALLEGED VIOLATION OF THE FCRA § 1681g**

140.    In response to paragraph 140, Defendants restate and incorporate by reference each and every preceding paragraph of this Answer as if fully set forth herein.

141.    Defendants admit that Plaintiff Henderson requested information from Public Data via U.S. Mail on or about March 12, 2020.  Defendants admit that Plaintiff McBride requested information from Public Data via U.S. Mail on or about and January 24, 2020.  Defendants deny the remaining allegations of paragraph 141.

142.     Defendants admit that Public Data responded to Plaintiff Henderson and Plaintiff McBride, on March 23 and March 27, 2020, respectively, by a one-page letter indicating a) that Public Data "is not a 'consumer reporting agency' subject to the Fair Credit Reporting Act"; (b) "Public Data provides the public with affordable access to public records.  It does not control the content of those records, and it does not match records to any specific consumer.  As a result, it does not have a 'file' [or report] on you"; and (c) no public records were found when searches of Public Data's database were performed using various iterations of Plaintiff McBride or Henderson's names.  Defendants deny the remaining allegations of paragraph 142.

143.     Defendants deny the allegations of paragraph 143.

144.     Defendants deny the allegations of paragraph 144.

145.     Defendants deny the allegations of paragraph 145.

146.     Defendants deny the allegations of paragraph 146.

147.     Defendants deny the allegations of paragraph 147.

**CLAIM TWO:  ALLEGED VIOLATION OF THE FCRA § 1681k(a)**

148.     In response to paragraph 148, Defendants restate and incorporate by reference each and every preceding paragraph of this Answer as if fully set forth herein.

149.     Defendants deny the allegations of paragraph 149.

150.     Defendants deny the allegations of paragraph 150.

151.     Defendants deny the allegations of paragraph 151.

152.     Defendants deny the allegations of paragraph 152.

153.     Defendants deny the allegations of paragraph 153.

## CLAIM THREE:  ALLEGED VIOLATION OF THE FCRA § 1681b(b)(1)

154.    In response to paragraph 154, Defendants restate and incorporate by reference each and every preceding paragraph of this Answer as if fully set forth herein.

155.    Defendants deny the allegations of paragraph 155.

156.    Defendants deny the allegations of paragraph 156.

157.    Defendants deny the allegations of paragraph 157.

158.    Defendants deny the allegations of paragraph 158.

159.    Defendants deny the allegations of paragraph 159.

## CLAIM FOUR:  ALLEGED VIOLATION OF THE FCRA § 1681e(b)

160.    In response to paragraph 160, Defendants restate and incorporate by reference each and every preceding paragraph of this Answer as if fully set forth herein.

161.    Defendants deny the allegations of paragraph 161.

162.    Defendants deny the allegations of paragraph 162.

163.    Defendants deny the allegations of paragraph 163.

164.    Defendants deny that Plaintiffs are entitled to any of the relief requested in the WHEREFORE clause immediately following paragraph 164.  Defendants deny that any class action could be certified in this matter.

165.    Defendants admit that the Complaint contains a jury demand but deny Plaintiffs are entitled to any relief.

## ADDITIONAL DEFENSES

Defendants intend to rely upon any additional defenses that become available or apparent during pretrial proceedings and discovery in this action and reserve the right to amend this Answer in order to assert all such further defenses.

## FIRST ADDITIONAL DEFENSE

The Complaint, and its purported claims, fail to the extent that the Complaint fails to state a claim upon which relief can be granted.

## SECOND ADDITIONAL DEFENSE

The Complaint, and its causes of action in Counts II-IV, fails to the extent that it is barred by the statute of limitations, including 15 U.S.C. § 1681p, or by the doctrine of laches.

## THIRD ADDITIONAL DEFENSE

The Complaint, and its purported causes of action, fails to the extent that the Complaint seeks injunctive relief as there is no private cause of action for injunctive relief under the FCRA.

## FOURTH ADDITIONAL DEFENSE

For convenience of the parties, judicial economy, and familiarity of the issues set forth in the Complaint, Defendants state that this matter should be transferred to the Northern District of Texas to facilitate adjudication of Plaintiffs' claims pursuant to 28 U.S.C. § 1404.

## FIFTH ADDITIONAL DEFENSE

Defendants are not consumer reporting agencies and do not provide consumer reports, and therefore have no duty to comply with the obligations of consumer reporting agencies under the FCRA.

## SIXTH ADDITIONAL DEFENSE

Plaintiffs' claims fail because Plaintiffs cannot prove injury in fact or causation for any alleged violation of the FCRA.  If Plaintiffs were injured and damaged, which injury and damages specifically are denied, then any injury and damages were caused in whole or in part by the acts or admissions of others, whether individual, corporate or otherwise for whose conduct Defendants are not responsible.

## SEVENTH ADDITIONAL DEFENSE

Defendants are entitled to a set-off, should any damages be awarded against it, in the amount of any damages or settlement amounts recovered by Plaintiffs with respect to the same alleged injuries.  Defendants are also entitled to have any damages that may be awarded to Plaintiffs reduced by the value of any benefit or payment to Plaintiffs from any collateral source.

## EIGHTH ADDITIONAL DEFENSE

Plaintiffs' claims to statutory damages fail because Defendants did not willfully violate any provision of the FCRA, even assuming the FCRA applies to Defendants.

## NINTH ADDITIONAL DEFENSE

Plaintiffs' individual and class claims are barred, in whole or in part, to the extent that Plaintiffs or any purported class member has not suffered any actual damages or other injury.

## TENTH ADDITIONAL DEFENSE

Plaintiffs' Complaint fails to allege facts sufficient to merit a recovery of actual damages, punitive damages, interest, attorney's fees, costs, or any other relief.

## ELEVENTH ADDITIONAL DEFENSE

Plaintiffs failed to take reasonable steps to protect themselves from the damages, if any, alleged in the Complaint and failed to mitigate any such alleged damages.

## TWELFTH ADDITIONAL DEFENSE

Plaintiffs' Complaint, and purported causes of action, fail because this Court lacks personal jurisdiction over Defendants and/or this case has been improperly venued in the Eastern District of Virginia, Richmond Division.

## THIRTEENTH ADDITIONAL DEFENSE

Plaintiffs' Complaint, and purported causes of action, to the extent Plaintiffs and/or the putative class members lack Article III standing to asset their claims.

## FOURTEENTH ADDITIONAL DEFENSE

Plaintiffs proposed classes fail on the basis that they seek to represent putative class members that lack personal jurisdiction to assert claims against Defendants in this Court.

## FIFTEENTH ADDITIONAL DEFENSE

Plaintiffs cannot recover from Defendants for punitive or statutory damages on the grounds that any award of punitive or statutory damages would be impermissible under the Due Process Clause of the Fifth Amendment to the United States Constitution, and the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, due to the lack of any actual damages suffered by Plaintiffs and the gross disparity between the allegations of harm and the size of the claim.  Stating further, any award of punitive or statutory damages would violate the constitutional standards enunciated in cases such as *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

## SIXTEENTH ADDITIONAL DEFENSE

Plaintiffs' claims against Defendants are barred by the Communications Decency Act, 47 U.S.C. § 230.

## SEVENTEENTH ADDITIONAL DEFENSE

This action may not properly proceed as a class action under Federal Rule of Civil Procedure 23 to the extent that, among other reasons, Plaintiffs' claims are not typical of the claims of each putative class member; questions of law and fact allegedly common to the putative class do not predominate over the numerous questions affecting only putative class members; a class action is not superior to other available methods for the fair and efficient adjudication of Plaintiffs' claims and any claims of putative class members; Plaintiffs and their counsel are unable to fairly and adequately protect the interests of the putative class members; and there are insurmountable difficulties in any attempt to proceed as a class action.

## EIGHTEENTH ADDITIONAL DEFENSE

Defendants reserve the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and the factual developments in this case.

WHEREFORE, Defendants request that this Court:

    (a)    Dismiss Plaintiffs' Complaint with prejudice;

    (b)    Enter judgment in favor of Defendants;

    (c)    Deny Class Certification;

    (d)    Award Defendants its attorneys' fees and costs of suit incurred in defending against the Complaint; and

    (e)    Award Defendants such other relief the Court deems appropriate.

<div style="margin-left:40%">

**THE SOURCE FOR PUBLIC DATA, L.P., D/B/A PUBLICDATA.COM, SHADOWSOFT, INC., HARLINGTON-STRAKER STUDIO, INC., AND DALE BRUCE STRINGFELLOW**

By: */s/Timothy J. St. George*
    David N. Anthony
    Virginia State Bar No. 31696
    Timothy J. St. George
    Virginia State Bar No. 77349
    *Counsel for Defendants*
    TROUTMAN PEPPER HAMILTON SANDERS LLP
    1001 Haxall Point
    Richmond, VA 23219
    Telephone: (804) 697-1254
    Facsimile: (804) 698-6013
    Email: david.anthony@troutman.com
    Email: tim.stgeorge@troutman.com

    Ronald I. Raether, Jr. (admitted *pro hac vice*)
    TROUTMAN PEPPER HAMILTON SANDERS LLP
    5 Park Plaza, Suite 1400
    Irvine, California 92614
    Telephone: (949) 622.2722
    Facsimile: (949) 622.2739
    Email: ron.raether@troutman.com

</div>

**JA78**

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY GUZZO PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: 703-424-7570
Facsimile: 703-591-9285
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiffs*

Dale W. Pittman
THE LAW OFFICE OF DALE W.
PITTMAN, P.C.
112-A W Tabb St
Petersburg, VA 23803-3212
Telephone: 804-861-6000
Facsimile: 804-861-3368
Email: dale@pittmanlawoffice.com
*Counsel for Plaintiffs*

Leonard A. Bennett
Craig C. Marchiando
CONSUMER LITIGATION ASSOCIATES
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
Telephone: 757-930-3660
Facsimile: 757-930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
*Counsel for Plaintiffs*

*/s/ Timothy J. St. George*
Timothy J. St. George
Virginia State Bar No. 77349
*Counsel for Defendants*
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA  23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
Email: tim.stgeorge@troutman.com

111035711

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**TYRONE HENDERSON, SR.,** *et al.*,

      **Plaintiffs,**

**v.**                              **Civil Action No. 3:20-cv-00294-HEH**

**THE SOURCE FOR PUBLIC**
**DATA, L.P.,** *et al.*,

      **Defendants.**

**DEFENDANTS' MOTION FOR JUDGMENT**
**ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)**

Defendants, The Source for Public Data, L.P., d/b/a PublicData.com, Shadowsoft, Inc., Harlington-Straker Studio, Inc., and Dale Bruce Stringfellow (collectively, "Defendants"), by counsel and pursuant to Federal Rule of Civil Procedure 12(c), respectfully move for judgment on the pleadings and dismissal of Plaintiffs' Second Amended Complaint [Dkt. No. 56] with prejudice.  The reasons for this Motion are set forth in the memorandum contemporaneously filed herewith.

WHEREFORE, Defendants respectfully request that the Court enter an order: (1) granting Defendants' Motion; (2) dismissing Plaintiffs' claims against Defendants with prejudice under Fed. R. Civ. P. 12(c); and (3) granting such further relief as the Court deems appropriate.

**THE SOURCE FOR PUBLIC DATA, L.P., D/B/A PUBLICDATA.COM, SHADOWSOFT, INC., HARLINGTON-STRAKER STUDIO, INC., AND DALE BRUCE STRINGFELLOW**

By: */s/Timothy J. St. George*

David N. Anthony
Virginia State Bar No. 31696
Timothy J. St. George
Virginia State Bar No. 77349
H. Scott Kelly
Virginia State Bar No. 80546
*Counsel for Defendants*
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA  23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
Email: david.anthony@troutman.com
Email: tim.stgeorge@troutman.com
Email: scott.kelly@troutman.com

Ronald I. Raether, Jr. (admitted *pro hac vice*)
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, California 92614
Telephone: (949) 622.2722
Facsimile: (949) 622.2739
Email: ron.raether@troutman.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of November 2020, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF System which will then send a notification of such

filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY GUZZO PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: 703-424-7570
Facsimile: 703-591-9285
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiffs*

Dale W. Pittman
THE LAW OFFICE OF DALE W.
PITTMAN, P.C.
112-A W Tabb St
Petersburg, VA 23803-3212
Telephone: 804-861-6000
Facsimile: 804-861-3368
Email: dale@pittmanlawoffice.com
*Counsel for Plaintiffs*

Leonard A. Bennett
Craig C. Marchiando
Amy L. Austin
CONSUMER LITIGATION ASSOCIATES
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
Telephone: 757-930-3660
Facsimile: 757-930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: amyaustin@clalegal.com
*Counsel for Plaintiffs*

*/s/ Timothy J. St. George*
Timothy J. St. George
Virginia State Bar No. 77349
*Counsel for Defendants*
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA  23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
Email: tim.stgeorge@troutman.com

111295487

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE HENDERSON, SR., *et al.*,  )
                                  )
           Plaintiffs,            )
                                  )
v.                                )        Civil Action No. 3:20-cv-294–HEH
                                  )
THE SOURCE FOR PUBLIC DATA,       )
*et al.*,                         )
                                  )
           Defendants.            )

## MEMORANDUM OPINION
### (Granting Defendants' Motion for Judgment on the Pleadings)

This matter is before the Court on Defendants' Motion for Judgment on the

Pleadings pursuant to Federal Rule of Civil Procedure 12(c). ("Motion," ECF No. 63.)

The principal issue before the Court is entirely novel: does 47 U.S.C. § 230 of the

Communication and Decency Act apply to claims raised pursuant to the Fair Credit

Reporting Act ("FCRA")? The parties have submitted memoranda supporting their

respective positions, and the Court heard oral argument on January 5, 2021. For the

reasons stated below, the Court will grant the Motion and dismiss the case.

## I.  BACKGROUND

Tyrone Henderson ("Henderson"), George O. Harrison, Jr. ("Harrison"), and

Robert McBride ("McBride," collectively "Plaintiffs") filed their Second Amended

Complaint on October 30, 2020, alleging that The Source for Public Data, L.P.,

Shadowsoft, Inc., Harlington-Straker Studio, Inc., and Dale Bruce Stringfellow

("Defendants") violated the FCRA by including inaccurate criminal information on

background check reports Defendants produced.  (Second Am. Compl., ECF No. 56.)

Defendants operate a website, publicdata.com, that allows customers to search through

various databases available via the site.  (*Id.* ¶¶ 67, 83.)  Defendants can pull this

information into a report.  (*Id.* ¶¶ 84, 85.)  Plaintiffs assert that Defendants purchase,

collect, and assemble public record information into reports, which employers then buy

from Defendants via their website.  (*Id.* ¶¶ 81–82.)  Generally, "Defendants obtain their

public records from vendors, state agencies, and courthouses."  (*Id.* ¶ 92.)  Defendants

purportedly "strip out or suppress all identifying information relating to [any criminal]

charges."  (*Id.* ¶ 85.)  After these alterations, Defendants then use "their own internally

created summaries of the charges."  (*Id.* ¶ 86.)  As Defendants' customers "ask a general

question" such as if "there [are] any criminal convictions anywhere that match this

applicant," Plaintiffs aver that "Defendants affirmatively sort, manipulate and infer

information to adapt data results to the requests received."  (*Id.* ¶ 87.)  In sum, Plaintiffs

maintain that "Defendants rewrite the court records into their own original entries into the

report."  (*Id.* ¶ 88.)

　　　　Each Plaintiff alleges various inaccuracies on Defendants' reports as well as other

FCRA violations.  Henderson claims that he applied to numerous positions but was

denied employment due to a criminal history that belongs to another person with the

same name.  (*Id.* ¶¶ 113–14.)  Henderson requested a copy of his criminal background

check report from Defendants multiple times, including on December 11, 2019, February

12, 2020, and March 12, 2020.  (*Id.* ¶¶ 116–17.)  Defendants did not send the requested

report and responded that they were not governed by the FCRA.  (*Id.* ¶ 117.)  Harrison

also alleges that there was inaccurate information reflected on his report that prevented him from obtaining employment or rental housing. (*Id.* ¶ 118.) He requested a full copy of his criminal background check report from Defendants on December 19, 2019, but they did not respond to Harrison's request. (*Id.*) McBride also requested a complete copy of his criminal background check report from Defendants on February 26, 2019, and January 24, 2020. (*Id.* ¶ 119.) McBride applied for a surveyor position in Virginia and the potential employer requested a background report from Defendants. (*Id.* ¶ 120.) McBride believes that the report contained numerous inaccuracies, such as several criminal offenses that were dismissed in state court, and was denied employment as a result. (*Id.* ¶¶ 124, 127.) McBride alleges that Defendants failed to provide a copy of the report after both of his requests. (*Id.* ¶¶ 119, 128.)

Plaintiffs bring a class action lawsuit, alleging that Defendants provided numerous reports for individuals in Virginia that contained false or inaccurate information. Plaintiffs state three claims jointly, alleging violations of §§ 1681g;[1] 1681k(a);[2]

---

[1] Section 1681g allows a person to request their file from a "consumer reporting agency" including all information in the file and the name of any person who requested the information within the past two years if procured for employment purposes or within the past year for any other reason.

[2] Section 1681k(a) requires that a "consumer reporting agency" that provides a report containing public record information that may have an adverse effect upon employment must either notify that the information was given and the name and address of the requester, or have procedures that ensure the information is complete and current.

1681b(b)(1).[3]  McBride brings one claim individually for a violation of 15 U.S.C.

§ 1681e(b).[4]

In support of their Motion, Defendants argue that Plaintiffs' claims are precluded

under § 230. (Defs.' Mem. Supp. at 1–2, ECF No. 64.)  Defendants allege that they have

satisfied the elements of § 230 immunity because they are an interactive computer service

and Plaintiffs treat Defendants as the publisher of a third-party's content. (Defs.' Mem.

Supp. 10–11.)  Moreover, they argue that because § 230 specifically lists several

exemptions and FCRA is not among them, § 230 applies.  (*Id.* at 16–17.)  In response,

Plaintiffs argue that Defendants do not satisfy the requirements for § 230 immunity and

that the immunity should not apply to the FCRA. (Pls.' Opp'n Mem. 1–3, ECF No. 68.)

## II.   STANDARD OF REVIEW

The standard for reviewing a motion for judgment on the pleadings under Federal

Rule of Civil Procedure 12(c) utilizes the same standard as a motion made pursuant to

Rule 12(b)(6).  *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th

Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  "In

reviewing a motion to dismiss for failure to state a claim, [a court] must 'accept as true all

of the factual allegations contained in the complaint and draw all reasonable inferences in

favor of the plaintiff.'"  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v.*

---

[3] Section 1681b(b)(1) requires that a "consumer reporting agency" obtain a certification from the requesters showing that they complied with the FCRA and that the information will not be used in violation of any law.  The "consumer reporting agency" must also provide a summary of the consumer's rights when producing the report.

[4] Section 1681e(b) requires that "a consumer reporting agency" follow reasonable procedures to ensure accuracy in its reports.

*Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)).  A Rule 12(b)(6) motion "does not

resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."

*Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v.*

*Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  "A complaint need only 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Ray*, 948 F.3d

at 226 (alteration in original) (quoting *Tobey,* 706 F.3d at 387).  However, a "complaint

must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.'"  *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Allegations have facial plausibility 'when

the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged.'"  *Tobey*, 706 F.3d at 386 (quoting

*Iqbal*, 556 U.S. at 679).  A court, however, "need not accept legal conclusions couched as

facts or unwarranted inferences, unreasonable conclusions, or arguments."  *Turner*, 930

F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

Generally, the district court does not consider extrinsic materials when evaluating

a complaint under Rule 12(b)(6).  The court, however, may consider "documents

incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights,*

*Ltd.*, 551 U.S. 308, 322 (2007), in addition to documents "attached to the motion to

dismiss, so long as they are integral to the complaint and authentic." *Fusaro v. Cogan,*

930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d

176, 180 (4th Cir. 2009)).  "[I]n the event of conflict between the bare allegations of the

complaint and any exhibit attached . . . , the exhibit prevails."  *Goines v. Valley Cmty.*

*Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (alteration in original) (quoting *Fayetteville*

*Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). This is based on "the

presumption that the plaintiff, by basing his claim on the attached document, has adopted

as true the contents of that document." *Id.* at 167. However, "before treating the contents

of an attached or incorporated document as true, the district court should consider the

nature of the document and why the plaintiff attached it," as well as whether plaintiff

relied on the attachment for its truthfulness. *See id.* at 167–69; *see also Wallace v.*

*Baylouny*, No. 1:16-cv-47, 2016 WL 3059996, at *4 (E.D. Va. May 31, 2016).

## III.   DISCUSSION

### A.   The Documents Attached to Defendants' Motion Are Not Incorporated by Reference into the Complaint

Defendants attached several documents to their Motion with an affidavit

supporting authenticity: first, an example of data Defendants receive from the Maryland

Court system, and second, the records A+ Student Staffing viewed after a search on

Defendants' website on August 15, 2016. (Defs.' Mem. Supp. 14.)[5] Defendants allege

that these documents are incorporated by reference into the Second Amended Complaint.

(*Id.*) Plaintiffs object to this evidence, claiming it is not authentic and hearsay pursuant

to the Federal Rules of Evidence. (Pls. Opp'n Mem. 10–13.)

---

[5] According to Defendants, A+ Student Staffing requested a background check report for McBride after he allegedly applied for a surveyor position. (Defs.' Mem. Supp. 14–15.)

6

JA88

The Court cannot consider either document attached to the Motion as neither is incorporated by reference into the Second Amended Complaint.[6]  For a document to be incorporated by reference into a complaint, there must be explicit language referring to the documents.  *Philips*, 572 F.3d at 180.  Although the Second Amended Complaint makes several general references as to how Defendants obtain criminal history information and references to sources of public records, and other agencies from which Defendants have obtained records, there is no specific reference to any Maryland court database or system.  (*See, e.g.*, Second Am. Compl. ¶¶ 4–7, 11, 26–28, 33, 85.) Furthermore, there is a generic discussion regarding McBride's prior attempt to obtain employment as a surveyor, a background check report his potential employer utilized, and mention of some information in the report, but there is no reference that the employer is A+ Student Staffing nor that the report at issue was generated on August 16, 2016. (*See id.* ¶¶ 13, 84–86, 120, 122.)  Moreover, Plaintiffs have not relied on these documents for their truthfulness, and indeed, object to validity of these documents.  *See Goines*, 822 F.3d at 167–69.  Therefore, the Court finds that these documents are not incorporated by reference.

### B. Section 230 Applies to Defendants

Though application of § 230 to the FCRA is a novel issue, the United States Court of Appeals for the Fourth Circuit has discussed § 230 at length and its analysis will guide this Court's hand in navigating this novel question.  The language of § 230 is clear:  "[n]o

---

[6] As the Court will find that these documents are not incorporated by reference into the Second Amended Complaint, the Court need not address Plaintiffs' hearsay and authenticity objections.

provider or user of an interactive computer service shall be treated as the publisher or

speaker of any information provided by another information content provider."

§ 230(c)(1). Phrased another way, an interactive computer service shall not be held liable

for content they do not create. § 230(c). In *Zeran v. American Online, Inc.*, the Fourth

Circuit explained that, "[b]y its plan language, § 230 creates a federal immunity to any

cause of action that would make service providers liable for information originating with

a third-party user of the service." 129 F.3d 327, 330 (4th Cir. 1997). "Congress thus

established a general rule that providers of interactive computer services are liable only

for speech that is properly attributable to them." *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009). Thus, in this circuit, § 230

provides interactive computer services immunity from suit regarding information

originating from third parties.

Importantly, Congress also enumerated five exceptions to immunity, expressly

stating that § 230 cannot have any effect on any "[f]ederal criminal statute," "intellectual

property law," "[s]tate law that is consistent with this section," "the Electronic

Communications Privacy Act," or "sex trafficking law." § 230(e)(1)–(5). Pursuant to the

canon of statutory construction of *expressio unius est exclusio alterius*, "[w]here

Congress explicitly enumerates certain exceptions to a general prohibition, additional

exceptions are not to be implied, in the absence of evidence of a contrary legislative

intent." *TRW, Inc. v. Andrews*, 534 U.S. 19, 28 (2001). Congress plainly chose five

exceptions to § 230 immunity and did not include the FCRA among them. *See* § 230(e).

Accordingly, by its plain language, § 230 can apply to FCRA claims.

Other courts have interpreted the plain language of § 230 broadly. *See, e.g.,*
*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 13 (2020)
(Thomas, J., respecting denial of certiorari) ("[C]ourts have construed [§ 230] broadly to
confer sweeping immunity."). For example, "the Fourth Circuit has held that when . . . a
service provider [is] not an information content provider, [§ 230] precludes liability for
defamation, tortious interference with business expectancy, and violations of the Lanham
Act because the owner of the site did not contribute to the allegedly fraudulent nature of
the comments at issue." *Directory Assistants v. Supermedia, LLC*, 884 F. Supp. 2d 446,
450 (E.D. Va. 2012) (citing *Nemet*, 591 F.3d at 257–58). When the content at issue
originates from a third party, defendants have also been afforded § 230 immunity in other
federal statutory causes of actions. *E.g.*, *Chicago Lawyers' Comm. for C.R. Under L.*,
*Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008), *as amended* (May 2, 2008)
(The Fair Housing Act); *Nat'l Assoc. of the Deaf v. Harvard Univ.*, 377 F. Supp. 3d 49,
66 (D. Mass. 2019) (Title III of the Americans with Disabilities Act and Section 505 of
the Rehabilitation Act); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 539 (E.D.
Va. 2003) (Title II of the Civil Rights Act of 1964).

By contrast, the Fourth Circuit recently declined to extend § 230 immunity for a
product liability claim when the defendant published a third-party seller's advertisement
in an electronic marketplace. *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 140 (4th
Cir. 2019). As the claims were "not based on the publication of another's speech," the
court held that § 230 could not apply because "the Communications Decency act protects
interactive computer service providers from liability *as a publisher of speech*, [but] it

does not protect them from liability as the seller of a defective product." *Id.* at 139–40. Unlike in *Erie Insurance*, Plaintiffs here seek to hold Defendants liable for the content on their website. *See id.* Thus, § 230 can apply to Plaintiffs' FCRA claims.

Plaintiffs' sole support for their argument that § 230 generally cannot apply to the FCRA is an unpublished case from the Central District of California. *Liberi v. Taitz*, No. SACV 11-0485, 2011 WL 13315691 (C.D. Cal. Oct. 17, 2011). After finding the plaintiffs' claims barred under the FCRA and the California equivalent, the *Liberi* court further reasoned that the claims would also be precluded by § 230 immunity. *Id.* at *10–11. Plaintiffs argue that this case signifies that § 230 and the FCRA are mutually exclusive because the *Liberi* court analyzed § 230 separately from the FCRA. (Pls.' Mem. Opp'n 29–30.) Plaintiffs' argument, based upon inferences and assumptions from dicta in an unpublished Central District of California case, is unpersuasive, particularly when the language of the statute and Fourth Circuit precedent are clear.[7]

It is evident that, although § 230 can apply to FCRA claims, this Court must consider whether all the elements are met to determine if Defendants are entitled to immunity under § 230. There are three requirements to successfully assert § 230 immunity: (1) a defendant is an interactive computer service; (2) the content is created by an information content provider; and (3) the defendant is alleged to be the creator of

---

[7] Defendants cite *Merritt v. Lexis Nexis*, No. 12-12903, 2012 WL 6725882 (E.D. Mich. Oct. 23, 2012), *report and recommendation adopted by* No. 12-12903, 2012 WL 6725881 (E.D. Mich. Dec. 27, 2012), as holding that FCRA claims are precluded under § 230 but this is a misunderstanding. Despite the plaintiff's claims, the district court did not find that the plaintiff stated a FCRA claim, and thus adopted the magistrate's report and recommendation to dismiss the complaint as barred by § 230. *Merritt*, 2012 WL 6725881, at *2, * 4–5.

the content. *Nemet*, 591 F.3d at 254. Based on the facts at hand, Defendants have satisfied all three elements.

First, an "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." § 230(f)(2). In other words, interactive computer services are "websites that do not generate original content but rather allow users to access the website in order to post information." *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d. 545, 547 (E.D. Va. 2015) (citing *Nemet*, 591 F.3d at 255) (finding the defendant to be an interactive computer service for operating "a website that allows consumers to comment on the quality of businesses, goods, and services"). An interactive computer service also extends to those websites that allow third parties access to post content by providing access through a portal. *Directory Assistants*, 884 F. Supp. 2d at 451. The immunity covers information that the defendant does not create as an information content provider. *Nemet*, 591 F.3d at 254. "A publishing website is immune under the CDA even when given notice that it has published false information." *Baldino's*, 88 F. Supp. 3d. at 547 (citing *Zeran*, 129 F.3d at 333). "Neither is immunity lost when the interactive service provider pays a third party for the content at issue, and essentially becomes a 'distributor' of the content." *Nasser v. WhitePages, Inc.*, No. 5:12CV097, 2013 WL 6147677, at *4 (W.D. Va. Nov. 22, 2013) (citing *Zeran*, 129 F.3d at 332). Moreover, "[d]istributors cannot be held liable for defamatory statements contained in the materials they distribute

unless it is proven at a minimum that they have actual knowledge of the defamatory statements upon which liability is predicated." *Zeran*, 129 F.3d at 331.

For example, in *Nasser*, the court found that the defendant was immune from liability when all content posted on the defendant's website originated from third parties. *Nasser*, 2013 WL 6147677, at * 3. The defendant often purchased the data through contracts or agreements with the third-party data providers, which the court found did not preclude immunity. *Id.* Defendants do much the same here; they are an access software provider and operate an interactive computer service because they upload the information onto their servers for their clients to access on the internet. (*See* Second Am. Compl. ¶¶ 67, 83.) Although Plaintiffs claim that the content must be produced by third-party users of Defendant's website, Defendants' status as an interactive computer service is not lost merely because they have purchased the data or edit it like a publisher or distributor in its traditional capacity. *See Nasser*, 2013 WL 6147677, at *4; *see also Zeran*, 129 F.3d at 330 ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred."). Thus, Defendants meet the definition of an interactive computer service.

Second, an "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." § 230(f)(3) *see also Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162–63 (9th Cir. 2008) (finding that "development of information" requires "material[]

contribut[ion]"). By contrast, an "access software provider" provides software that can "(A) filter, screen, allow, or disallow content; (B) pick, choose, analyze, or digest content; or (C) transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content." § 230 (f)(4)(A)–(C).

Plaintiffs clearly state that Defendants do not create the content; they obtain it "from vendors, state agencies, and courthouses." (Second Am. Compl. ¶ 92.) It is those entities that create the records Defendants upload to their website and collect into a report. Specifically, Plaintiffs aver that Defendants "create summaries of the charges" and "sort, manipulate and infer information." (*Id.* ¶¶ 86–87.) In fact, Plaintiffs state that Defendants' "primary and only business function involves purchasing, collecting, and assembling the information contained on [Defendants'] servers." (*Id.* ¶ 66.) These allegations fall within the statute's definition of an access software provider because they "pick, choose, analyze, or digest content." *See* § 230(f)(4)(B). Plaintiffs do not allege that Defendants materially contribute information or create content. At most, Plaintiffs state that they "strip out or suppress" information. (*Id.* at ¶ 85.) That function falls within § 230(f)(4)(A), which allows access software providers to "filter, screen, allow, or disallow content." Thus, Defendants are not information content providers as they do not produce the content of the reports at issue in this litigation.

Finally, in order for a plaintiff to state a viable claim and defeat the defendant's claim of immunity, a plaintiff must allege that the defendant created the content at issue. *Zeran,* 129 F.3d at 330 ("Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role."). Indeed, Plaintiffs

state that Defendants have been "publishing inaccurate and/or incomplete public records and criminal information." (*Id.* ¶ 94.) Plaintiffs treat Defendants as if they are the publisher and distributer of third-party content. Section 230 precludes this Court from entertaining Plaintiffs' claims treating Defendants as publishers. *See Zeran,* 129 F.3d at 330. There is no doubt that Defendants do not create the content—Plaintiffs admit in their Second Amended Complaint that the convictions and other information included on Defendants reports are derived from other information content providers such as courts and other repositories of this information. Although Plaintiffs allege that Defendants manipulate and sort the content in a background check report, there no explicit allegation that Defendants materially contribute to or create the content themselves.

## IV.   CONCLUSION

In sum, the Court finds § 230 immunity can apply to FCRA claims and Defendants qualify for the immunity. Accordingly, the Motion for Judgment on the Pleadings will be granted.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/
Henry E. Hudson
Senior United States District Judge

Date: May 19, 2021
Richmond, Virginia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

TYRONE HENDERSON, SR., *et al.*,    )
    )
        Plaintiffs,    )
    )
v.    )    Civil Action No. 3:20-cv-294–HEH
    )
THE SOURCE FOR PUBLIC DATA,    )
*et al.*,    )
    )
        Defendants.    )

## <u>ORDER</u>
**(Granting Defendants' Motion for Judgment on the Pleadings)**

THIS MATTER is before the Court on Defendants' Motion for Judgment on the

Pleadings, filed on November 11, 2020. (ECF No. 63.) For the reasons set forth in the

accompanying Memorandum Opinion, the Motion is GRANTED, and the Second

Amended Complaint is DISMISSED WITH PREJUDICE.

The Clerk is DIRECTED to send a copy of this Order and the accompanying

Memorandum Opinion to all counsel of record.

This case is CLOSED.

It is so ORDERED.

                              /s/
                              Henry E. Hudson
                              Senior United States District Judge

Date: May 19, 2021
Richmond, Virginia

JA97

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE HENDERSON,          )
    *et al.*,               )
                             )
           Plaintiffs,     )
                             )
v.                         )          No. 3:20-cv-00294 (HEH)
                             )
                             )
THE SOURCE FOR PUBLIC DATA,   )
    *et al.*,               )
                             )
           Defendant.      )

## **NOTICE OF APPEAL**

Notice is hereby given that Plaintiffs hereby appeal to the United States Court of Appeals

for the Fourth Circuit from the Final Order and Memorandum Opinion entered in this action on

the nineteenth day of May 2021. (ECF Nos. 78 & 79.)


                         Respectfully Submitted,

                         **PLAINTIFFS**,

                         By: */s/ Leonard A. Bennett*

                         Leonard A. Bennett, VSB #37523
                         Craig C. Marchiando, VSB #89736
                         **CONSUMER LITIGATION ASSOCIATES, P.C.**
                         763 J. Clyde Morris Boulevard, Suite 1-A
                         Newport News, VA 23601
                         (757) 930-3660
                         (757) 930-3662 fax
                         Email:  lenbennett@clalegal.com

Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Dale W. Pittman, VSB #15673
The Law Office of Dale W. Pittman, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA. 23803
Telephone (804) 861-6000
Facsimile (804) 861-3368jj
Email: dale@pittmanlawoffice.com

*Counsel for Plaintiffs*

## Certificate of Service

Hereby certify that on the 14th day of June, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEG) to all counsel of record.

/s/ *Leonard A. Bennett*
Leonard A. Bennett, VSB #37523
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
(757) 930-3660
(757) 930-3662 fax
Email:  lenbennett@clalegal.com

**JA99**

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2021, I electronically filed the foregoing corrected version of the joint appendix with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

/s/ Jennifer D. Bennett
Jennifer D. Bennett