No. 21-1678

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

TYRONE HENDERSON, ET AL.,
*Plaintiffs-Appellants*,

v.

THE SOURCE FOR PUBLIC DATA, L.P., ET AL.,
*Defendants-Appellees*.

_____

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 3:30-cv-294
Hon. Henry E. Hudson

_____

**BRIEF OF AMICI CURIAE
FEDERAL TRADE COMMISSION,
CONSUMER FINANCIAL PROTECTION BUREAU,
AND NORTH CAROLINA SUPPORTING REVERSAL**

_____

STEPHEN VAN METER
   *Acting General Counsel*
STEVEN Y. BRESSLER
   *Acting Deputy General Counsel*
LAURA HUSSAIN
   *Assistant General Counsel*
DERICK SOHN
   *Senior Counsel*
CONSUMER FINANCIAL PROTECTION BUREAU
1700 G Street, N.W.
Washington, D.C. 20552
(202) 435-7873
derick.sohn@cfpb.gov

JAMES REILLY DOLAN
   *Acting General Counsel*
JOEL MARCUS
   *Deputy General Counsel*

THEODORE (JACK) METZLER
   *Attorney*
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-3502
tmetzler@ftc.gov

*Additional counsel on inside cover.*

JOSHUA H. STEIN
    *Attorney General*

DANIEL P. MOSTELLER
    *Deputy General Counsel*

NORTH CAROLINA DEPARTMENT OF JUSTICE
114 W. Edenton Street
Raleigh, N.C. 27602

# TABLE OF CONTENTS

Table of Authorities ............................................................ ii

Question Presented............................................................1

Interest of Amici Curiae.....................................................2

Statement..........................................................................5

A.  The Fair Credit Reporting Act........................................6

B.  Section 230 of the Communications Decency Act............9

C.  The District Court's Decision.........................................12

Argument...........................................................................15

I.   Introduction and Summary ..............................................15

II.  Section 230 Does Not Provide Immunity From the Plaintiffs'
     FCRA Claims..................................................................17

     A.  The plaintiffs' FCRA claims do not treat Public Data as a
         publisher or speaker...................................................18

     B.  Even if the plaintiffs' FCRA claims were based on the
         content of Public Data's reports, Public Data is not immune
         because it is an "information content provider" for that
         content. .....................................................................23

Conclusion .........................................................................28

# TABLE OF AUTHORITIES

**CASES**

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) ..................................... 18, 19

*Fair Hous. Council v. Roommates.com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) ............................................................. 23, 24, 26

*FTC v. Accusearch, Inc.*, 570 F.3d 1187 (10th Cir. 2009) ................................. 3, 27

*FTC v. LeadClick Media, LLC,*
    838 F.3d 158 (2d Cir. 2016)..................................... 3, 11, 17, 18, 23, 24

*Huff v. Telecheck Servs.*, 923 F.3d 458 (6th Cir. 2019)..............................................20

*Jones v. Dirty World Entm't Recordings LLC,*
    755 F.3d 398 (6th Cir. 2014)........................................... 11, 13, 17, 24

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
    591 F.3d 250 (4th Cir. 2009)........................................................ 23, 25

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) ........................................................7

*Universal Commun. Sys. v. Lycos, Inc.,*
    478 F.3d 413 (1st Cir. 2007) ............................................................ 11, 17

*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997)..................... 10, 11, 18, 21

**STATUTES, REGULATIONS, LEGISLATIVE MATERIALS**

12 U.S.C. § 5511 ...........................................................................................3

12 U.S.C. § 5512 ...........................................................................................3

12 U.S.C. § 5552 ...........................................................................................4

12 U.S.C. § 5581 ...........................................................................................3

15 U.S.C. § 1681 ........................................................................... 1, 7, 8, 15

15 U.S.C. § 1681a ................................................................................... 7, 12

15 U.S.C. § 1681b ........................................................................ 1, 8, 12, 22

15 U.S.C. § 1681c ........................................................................................21

15 U.S.C. § 1681e ........................................................................................1, 8

15 U.S.C. § 1681g ........................................................................ 1, 9, 12, 20

15 U.S.C. § 1681k ............................................................................. 1, 9, 12

15 U.S.C. § 1681n .........................................................................................9

15 U.S.C. § 1681o .................................................................9

15 U.S.C. § 1681s ........................................................... 2, 3, 4

15 U.S.C. § 45 ....................................................................2

47 U.S.C. § 230 ................................... 1, 9, 10, 11, 14, 17, 18, 23, 25, 27

12 C.F.R. § 1022 .................................................................3

S. Rep. No. 91-517 (1969) ................................................... 6, 7, 15

**OTHER AUTHORITIES**

Consumer Fin. Prot. Bureau, *Consumer Reporting, larger participants examination procedures* (Feb. 2020) ........................3

Consumer Fin. Prot. Bureau, *Consumer Response Annual Report* (March 2021) ...........................................................4

Consumer Fin. Prot. Bureau, *Fair Credit Reporting Act (FCRA) examination procedures* (Oct. 2012) ........................3

FTC, *Background Checks* (March 2018) .......................................4

FTC, *Consumer Sentinel Network Databook 2020* (Feb. 2021) ............4

FTC, *Keeping Your Credit Report in Check* (Jan. 2014) .......................4

## QUESTION PRESENTED

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, seeks to ensure fairness in the system for reporting and use of information about consumers by regulating how consumer reporting agencies create and provide reports about consumers to their customers. Among other things, it requires consumer reporting agencies to:

- provide consumers with a copy of their files upon request;

- adopt reasonable procedures to ensure maximum possible accuracy in preparing their reports; and

- follow specific procedures when they furnish consumer reports for employment purposes.

15 U.S.C. §§ 1681b(b), 1681e(b), 1681g(a), 1681k(a).

Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), makes providers of interactive consumer services immune from claims that seek to hold them liable as the publisher or speaker of content for which they are not wholly or partially responsible for creating or developing. The question presented is:

Whether a consumer lawsuit alleging violations of the FCRA's procedural and disclosure requirements seeks to hold the defendant liable as the publisher or speaker of information provided by a third party and is thereby preempted by Section 230?

## INTEREST OF AMICI CURIAE

As the federal government agencies with principal responsibility for enforcement of the Fair Credit Reporting Act, amici curiae the Federal Trade Commission and Consumer Financial Protection Bureau have a strong interest in ensuring that Section 230 of the Communications Decency Act is not misconstrued to confer immunity from provisions of the FCRA that provide important protections to consumers.

The Commission has been charged by Congress with the mission to protect consumers from deceptive or unfair trade practices. 15 U.S.C. § 45(a). As part of that mission, the Commission has long played a key role in the implementation, enforcement, and interpretation of the FCRA. The statute grants the Commission wide jurisdiction to enforce its requirements against entities involved in the consumer reporting system.[1]

A violation of the FCRA "constitute[s] an unfair or deceptive act or practice in commerce, in violation of section 5(a) of the Federal Trade Commission Act." 15 U.S.C. § 1681s(a). And the FCRA grants the Commission "such procedural, investigative, and enforcement powers . . . as though the applicable terms and conditions of the Federal Trade Commission Act were part of [the FCRA]." *Id.* The Commission has enforced the FCRA numerous times; it has also successfully op-

---

[1] *See* 15 U.S.C. § 1681s(a). The primary exceptions to the Commission's jurisdiction are federally regulated financial institutions. *See* 15 U.S.C. § 1681s(a)-(b).

posed arguments that Section 230 of the Communications Decency Act immunized defendants from liability for their violations of consumer protection laws. *See FTC v. LeadClick Media, LLC*, 838 F.3d 158, 172-177 (2d Cir. 2016); *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1195-1201 (10th Cir. 2009).

The Consumer Financial Protection Bureau implements and enforces Federal consumer financial law, including the FCRA. 12 U.S.C. § 5511(a); 12 U.S.C. § 5481(12)(F); 15 U.S.C. § 1681s(b). The Bureau is responsible for promulgating rules implementing most provisions of the FCRA, 12 U.S.C. § 5581, which are codified at 12 C.F.R. § 1022 (referred to as Regulation V). Congress directed courts to defer to the Bureau's determinations regarding the meaning or interpretation of Federal consumer financial law, including the FCRA, as though the Bureau were the only agency authorized to apply, enforce, interpret, or administer the law. 12 U.S.C. § 5512(b)(4)(B). The Bureau is also responsible for supervising non-banks under its jurisdiction for compliance with the FCRA, including the nation-wide consumer reporting agencies.[2]

---

[2] *See* Consumer Fin. Prot. Bureau, *Fair Credit Reporting Act (FCRA) examination procedures* (Oct. 2012), https://www.consumerfinance.gov/compliance/supervision-examinations/fair-credit-reporting-act-fcra-examination-procedures; Consumer Fin. Prot. Bureau, *Consumer Reporting, larger participants examination procedures* (Feb. 2020), https://www.consumerfinance.gov/compliance/supervision-examinations/consumer-reporting-larger-participants-examination-procedures.

Both the Commission and the Bureau publish guidance on FCRA compliance for entities involved in the consumer reporting system, including consumer reporting agencies, those who furnish the information in consumer reports, and those who use those reports to make critical decisions about consumers' access to credit, insurance, employment, and housing.[3] Both agencies regularly receive complaints from consumers about credit or consumer reporting practices. In 2020, the agencies received over 300,000 complaints about credit or consumer reporting.[4]

The North Carolina Attorney General also has authority to enforce violations of the FCRA in coordination with the Commission and the Bureau. 12 U.S.C. § 5552; 15 U.S.C. § 1681s(c). The North Carolina Attorney General's Office also regularly receives, and seeks to obtain resolution of, complaints from North Carolina consumers concerning disputes related to compliance with the FCRA.

---

[3] *See generally* guidance collected at https://www.ftc.gov/tips-advice/business-center/privacy-and-security/credit-reporting, and at https://www.consumerfinance.gov/compliance/compliance-resources/other-applicable-requirements/fair-credit-reporting-act/. The Commission also publishes information to inform consumers of their rights under the FCRA. *See, e.g.*, FTC, *Background Checks* (March 2018), https://www.consumer.ftc.gov/articles/0157-background-checks; FTC, *Keeping Your Credit Report in Check* (Jan. 2014), http://www.consumer.ftc.gov/blog/2014/01/keeping-your-credit-report-check.

[4] *See* FTC, *Consumer Sentinel Network Databook 2020* (Feb. 2021) at 5, https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2020/csn_annual_data_book_2020.pdf; Consumer Fin. Prot. Bureau, *Consumer Response Annual Report* (March 2021) at 9, https://files.consumerfinance.gov/f/documents/cfpb_2020-consumer-response-annual-report_03-2021.pdf.

As the consumer reporting system evolves with the emergence of new technologies and business practices, FCRA enforcement remains a top priority for the Commission, the Bureau, and the North Carolina Attorney General. The agencies' efforts would be significantly hindered, however, if the district court's decision below is allowed to stand. The district court held that Section 230 of the Communications Decency Act provides immunity from an action to enforce procedural and disclosure obligations of the FCRA because the defendants' consumer reports were compiled from records it collected from third parties. That holding misconstrues Section 230 by extending immunity to claims that do not seek to treat the defendant as the publisher or speaker of any third-party information.

## STATEMENT

The two statutes at issue in this case were passed to solve problems that overlap little, if at all, and which do not overlap here.

The FCRA was designed to make the consumer reporting system fair to consumers so that potentially inaccurate information is not used to deny them access to necessities like credit, insurance, housing, and employment. It requires consumer reporting agencies to furnish consumer reports only for allowed purposes and to follow procedures designed to ensure accuracy. The statute also gives consumers the right to receive and dispute the information in their files, to know when certain information about them has been reported, and to sue consumer reporting agencies

who negligently or willfully fail to comply with its requirements. But it does not make consumer reporting agencies liable simply for publishing inaccurate information.

Section 230 is unrelated to the FCRA. It shields providers of internet services from liability based on information content that third parties provide through the internet. Thus, for example, Twitter cannot typically be held liable for a user's defamatory tweet. The immunity that Section 230 provides was intended to foster the development of the internet and the free exchange of ideas by removing the threat that internet providers would be held liable for content posted by their users. It was not intended to reach—and by its terms does not reach—claims like those in this case, which turn on a consumer reporting agency's failure to comply with procedural rules set forth in statutory text that does not base liability directly on the content of its reports.

## A.     The Fair Credit Reporting Act

Congress enacted the FCRA in 1970 to address recent (at the time) developments in computer technology which had made possible the collection and exchange of vast stores of information about consumers and created "the possibility of a nationwide data bank covering every citizen." S. Rep. No. 91-517, at 2 (1969). Congress designed the Act "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information," and "to prevent an undue invasion

of the individual's right of privacy in the collection and dissemination of credit information." *Id.* at 1.

The FCRA imposes obligations on those who collect and disseminate information about consumers, which it terms "consumer reporting agencies," and regulates the collection, assembly, and use of that information in "consumer reports." *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1545 & nn.1-2 (2016).

As relevant here, a "consumer reporting agency" under the statute is any person who "regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). A "consumer report," meanwhile, is defined as a consumer reporting agency's communication of information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," which is used (or expected to be used) or collected for specified purposes, including the consumer's eligibility for credit, insurance, employment, or housing. 15 U.S.C. § 1681a(d)(1).

Congress determined that consumer reporting agencies "ha[d] assumed a vital role" in the process for evaluating consumers' credit worthiness and general character by collecting information about consumers and providing it to third parties. 15 U.S.C. § 1681(a)(3). Congress found a corresponding need to ensure that

consumer reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). The Act therefore subjects consumer reporting agencies to rules designed to ensure that the consumer reporting system "is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of [consumer-report] information." 15 U.S.C. § 1681(b).

Those requirements generally involve procedures that consumer reporting agencies must follow; they do not mandate that consumer reports always be accurate. The four requirements at issue in this case are typical. Section 1681e, for example, requires consumer reporting agencies to "*follow reasonable procedures* to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). While inaccuracies may be evidence that an agency lacked reasonable procedures, it is the lack of procedures that is the basis for liability imposed by the statutory text. Two other sections at issue here similarly involve procedures that a consumer reporting agency must follow when providing employment background checks. One section requires a consumer reporting agency to obtain a certification from the person requesting the report that they have complied and will comply with certain FCRA requirements and that they will not use the report in violation of state or federal employment laws. 15 U.S.C. § 1681b(b)(1). In addition, if such a report contains

adverse public record information, the consumer reporting agency must either noti-

fy the consumer that it is reporting such information and give the name and address

of the person who requested the report, or "maintain strict procedures" to ensure

that any information that is likely to have an adverse effect on employment is

"complete and up to date." 15 U.S.C. § 1681k(a)(2). The fourth FCRA requirement

at issue in this case involves consumers' right to know the contents of their files. It

requires a consumer reporting agency to disclose to the consumer "[a]ll infor-

mation in the consumer's file" at the consumer's request. 15 U.S.C. § 1681g(a)(1).

The FCRA gives consumers the right to sue consumer reporting agencies for

negligently or willfully violating its requirements. 15 U.S.C. §§ 1681o, 1681n.

Because the statute does not directly require consumer reports to be accurate, how-

ever, liability in such as case generally depends on the defendant's compliance

with FCRA's procedural requirements.

**B.    Section 230 of the Communications Decency Act**

Section 230 of the Communications Decency Act addresses a very different

and unrelated issue—exposure of the providers of internet services to liability for

content posted by their users. In Section 230, Congress recognized that the internet

had created "a forum for a true diversity of political discourse, unique opportuni-

ties for cultural development, and myriad avenues for intellectual activity."

47 U.S.C. § 230(a)(3). Congress was concerned, however, that the specter of tort

9

liability based on user-posted content would lead providers of internet services to restrict the content they allow to be posted and ultimately stunt the development of the burgeoning internet medium. *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-331 (4th Cir. 1997). At the same time, Congress did not want to discourage companies from filtering or blocking offensive content from their services. *Id.* at 331.

Section 230 was Congress's answer. To promote the robust exchange of ideas over the internet, avoid the potential chilling effect of liability for user content, and encourage intermediaries to police offensive content on their platforms, Section 230 immunizes the providers of internet services from liability for the content posted by their users. *See id.* In pertinent part, it states:

> "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."

47 U.S.C. § 230(c)(1).

Section 230(c)(1) contains three requirements for immunity. First, the defendant must be a provider or user of an "interactive computer service." That term is defined broadly to include "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Second, the claim at issue must seek to treat the defendant "as the publisher or speaker" of specified content. 47 U.S.C. § 230(c)(1).

And third, the content that forms the basis of the claim must be "provided by another information content provider." *Id.* An "information content provider" means "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Because Section 230 limits immunity to disputes involving content provided by "another" information content provider, immunity is not available if the defendant is partly or wholly responsible for the content. *See*, *e.g.*, *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016); *Zeran*, 129 F.3d at 330.

Courts have boiled the requirements down to a three-part test, requiring that "(1) the defendant asserting immunity is an interactive computer service provider, (2) the particular information at issue was provided by another information content provider, and (3) the claim seeks to treat the defendant as a publisher or speaker of that information." *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 409 (6th Cir. 2014); *see also, e.g.*, *LeadClick Media*, 838 F.3d at 173; *Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007).

## C.    The District Court's Decision

The plaintiffs in this case allege that Public Data[1] collects, sorts, summarizes, and assembles public record information into reports that it makes available to third parties for purchase, and that Public Data therefore qualifies as a "consumer reporting agency" under the FCRA. *See* 15 U.S.C. § 1681a(f); D.Ct. Docket No. 56 at 16-18. They allege that Public Data:

- failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of its reports, in violation of 15 U.S.C. § 1681e(b);

- failed to disclose to the plaintiffs the contents of their files upon request, in violation of 15 U.S.C. § 1681g(a)(1);

- failed to obtain the certifications required by FCRA prior to furnishing employment background reports, in violation of 15 U.S.C. § 1681b; and

- failed to inform plaintiffs that it was furnishing criminal information about them for background purposes or provide them with the name and address of the persons to whom the information was reported, as required by 15 U.S.C. § 1681k(a)(1).

J.A. 85-86 & nn.1-4; D.Ct. Docket No. 56 at 22-24, 29-30. Although the plaintiffs allege that Public Data's practices had led it to provide numerous reports containing inaccurate criminal history information, *id.*, they do not seek to hold Public Data liable on the basis of the inaccurate data. Instead, each claim rests on Public

---

[1] For convenience, we refer to the individual and corporate defendants collectively as "Public Data."

Data's failure to follow the process-oriented requirements that the FCRA imposes on consumer reporting agencies.

Public Data sought judgment on the pleadings, arguing that Section 230 provides it with immunity from claims that it violated the FCRA. J.A. 83.

Without considering the elements of the claims or whether any alleged violation hinged on the content or accuracy of Public Data's reports or its website, the district court began its analysis by declaring that Section 230 "can apply to Plaintiffs' FCRA claims" because the plaintiffs "seek to hold Defendants liable for the content of their website." J.A. 92.

The court then addressed whether "all the elements" necessary for Section 230 immunity were met.[2] *Id.* The court first found that Public Data qualifies for immunity as both an "access software provider[]" and an "interactive computer service" because it "uploads the information onto [its] servers for [its] clients to access on the internet." J.A. 94. The court did not specify whether or how the information that Public Data uploads forms the basis for any of the FCRA violations alleged by the plaintiffs.

---

[2] The district court described the elements of Section 230 immunity as: "(1) a defendant is an interactive computer service; (2) the content is created by an information content provider; and (3) the defendant is alleged to be the creator of the content." J.A. 92-93; *cf. supra* p. 11 (listing the elements as described in *Jones*, 755 F.3d at 409 and other cases).

The court next found that Public Data is not an "information content provid-er" because it "[does] not produce the content of the reports at issue in this litiga-tion." J.A. 95. The court did not, however, explain how "the content of the reports" is "at issue in this litigation" or in any of the plaintiffs' claims. *See id.* Nor did the court consider whether—even assuming the content of the reports were at issue— the plaintiffs plausibly alleged that Public Data was "responsible, in whole or in part, for the creation or development" of its reports, thereby meeting Section 230's definition of an information content provider to whom the statutory immunity does not apply. 47 U.S.C. § 230(f)(3). Instead, the court appears to have believed that a defendant who qualifies as an "access software provider" under Section 230 cannot also be an "information content provider" under the statute. J.A. 94-95. After recit-ing the complaint's allegations—that Public Data gathers information from third parties; that it sorts, manipulates, and draws inferences from the data; that it creates its own summaries of the information; and that it collects the information into the reports it provides to customers—the court concluded that the defendants "fall within the statute's definition of an access software provider." J.A. 95.

Finally, the district court held that the plaintiffs' claims treat Public Data as the "publisher and distributor of third-party content." *Id.* Once again, the court did not consider how or whether any of the claims alleged by the plaintiffs would treat Public Data as the "speaker" of the information in its reports or impose liability for

exercising the traditional functions of a publisher. Instead, the court based its find-ing on a line in the complaint stating "that Defendants have been 'publishing inac-curate and/or incomplete public records and criminal information.'" *Id.* (quoting D.Ct. Docket No. 56 at 18).

## ARGUMENT

## I.    INTRODUCTION AND SUMMARY

The vast expansion of companies offering to sell background reports and other information about consumers on the internet has shown the wisdom in Con-gress's concern about "the possibility of a nationwide data bank covering every citizen." S. Rep. No. 91-517, at 2 (1969). It is easier than ever for such companies to collect information about virtually everyone and make it available for sale on the internet. The "possibility of a nationwide data bank"—and its use to grant or deny consumers access to vital services—that motivated Congress to enact the FCRA has become a reality, not just in the hands of the three nationwide credit reporting agencies, but also on the servers of many other consumer reporting agencies who provide background reports over the internet. Thus, the need to ensure that such companies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy"—by enforcing the procedures and lim-itations that Congress mandated in the FCRA—is greater than ever. 15 U.S.C. § 1681(a)(4).

Enforcing the FCRA's requirements—whether through government enforcement or private litigation—does not implicate the concerns that Congress sought to address in Section 230 of the Communications Decency Act. Although the information that forms the basis of a consumer reporting agency's reports may originate from other sources, claims that a person has violated the FCRA generally do not seek to hold the defendant liable as the publisher or speaker of third-party content. Instead, those claims seek to hold consumer reporting agencies liable for their actions or omissions—not their speech—when they fail to follow the FCRA's mandates.

The claims in this case demonstrate how the FCRA regulates the actions of consumer reporting agencies rather than treating them as speakers or publishers of third party data. None of the alleged violations seeks to impose liability for the content of Public Data's website or its reports. Instead, liability turns on Public Data's failure to comply with its obligations to use reasonable procedures when it prepares reports, to provide consumers with a copy of their files, and to obtain certifications and notify the consumer when it furnishes reports to be used for employment purposes. Those claims do not treat Public Data as the publisher or speaker of any content that originated with a third party and Section 230 does not therefore provide immunity from them.

## II.   SECTION 230 DOES NOT PROVIDE IMMUNITY FROM THE PLAINTIFFS' FCRA CLAIMS.

Section 230's immunity provision states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute thus grants immunity if "(1) the defendant asserting immunity is an interactive computer service provider, (2) the particular information at issue was provided by another information content provider, and (3) the claim seeks to treat the defendant as a publisher or speaker of that information." *Jones*, 755 F.3d at 409; *LeadClick Media*, 838 F.3d at 173; *Universal Commun. Sys.*, 478 F.3d at 418.

The district court's fundamental error stems from its finding that the plaintiffs in this case "seek to hold Defendants liable for the content of their website." J.A. 92. That error led the court to analyze the application of Section 230 as if the claims in this case sought to impose liability for the content of Public Data's reports rather than Public Data's failure to comply with specific requirements of the FCRA. J.A. 93-96. The district court thus viewed the pertinent questions to be whether Public Data qualified as an "information content provider" by providing its reports over the internet, and whether it "created the content" of its reports or the information had instead been provided by third parties. *Id.*

The district court should instead have analyzed whether each of the four claims in this case seek to impose liability on Public Data as a "publisher or speak-

er" of information, and if so, whether the information that formed the basis of the claim was "provided by another information content provider." 47 U.S.C. § 230(c)(1). The claims against Public Data do not qualify because none of them seeks to treat Public Data as a "publisher or speaker" of information provided by another content provider.[3]

### A.   The plaintiffs' FCRA claims do not treat Public Data as a publisher or speaker.

By its terms, Section 230 applies only to claims that seek to treat the defendant as "the publisher or speaker" of third-party content. 47 U.S.C. § 230(c)(1). To determine whether a cause of action does so, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *LeadClick Media*, 838 F.3d at 175 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009)). This Court has commented that "a publisher's traditional editorial functions" include "deciding whether to publish, withdraw, postpone or alter content." *Zeran*, 129 F.3d at 330. The Ninth Circuit has similarly stated that "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. "Thus, a publisher reviews material submitted

---

[3] The agencies take no position on whether Public Data meets the statutory definition of "interactive computer service." 47 U.S.C. § 230(f)(2).

for publication, perhaps edits it for style or technical fluency, and then decides whether to publish it." *Id.*

The claims in this case do not derive from that sort of conduct. To begin with, nobody submits information about consumers to Public Data for publication. Quite the opposite, Public Data is alleged to seek out and purchase consumer information from numerous sources, to curate the records to match specific individuals, and then to compile and summarize that information in the reports it sells online. D.Ct. Docket No. 56 at 16-18. More importantly, however, none of the claims in this case involves a duty that "derives from [Public Data's] status or conduct as a 'publisher or speaker.'" *Barnes*, 570 F.3d at 1102. Instead, the claims involve duties that FCRA imposes on consumer reporting agencies which are specific to the function of a consumer reporting agency.

For example, the duties at issue in the plaintiffs' employment-background-report claims are the FCRA's requirements that consumer reporting agencies (1) obtain certain certifications from customers before furnishing such a report, and (2) notify consumers when they furnish a report containing negative information. *See* 15 U.S.C. §§ 1681b(1), 1681k(a)(1). Neither of those requirements derives from a purported status as a publisher or editorial functions like those described in *Zeran* and *Barnes*. Publishers do not have to obtain certifications from their readers before publishing information, nor do they have any legal duty to inform the sub-

ject of a story before publication. Those duties exist only by virtue of the FCRA and apply only to consumer reporting agencies.

The claim that Public Data failed to disclose the information in its files on consumers at their request is even further removed from alleging the violation of a duty that derives from status as a publisher. The duty at issue in such a claim is that "a consumer agency must disclose '[a]ll information in the consumer's file' upon request." *Huff v. Telecheck Servs.*, 923 F.3d 458, 462 (6th Cir. 2019) (quoting 15 U.S.C. § 1681g(a)(1)). That duty is wholly unrelated to the defendant's status or conduct as the "publisher or speaker" of any content. And far from imposing liability for publishing third-party information, the violation stems from a consumer reporting agency's *failure* to disclose the information in its file. *See* 15 U.S.C. § 1681g(a)(1).

The claim that Public Data failed to follow reasonable procedures to ensure the accuracy of its reports likewise does not derive from Public Data's status or conduct as a "publisher or speaker." The duty at issue in that claim is the FCRA requirement that "[w]henever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Although preparing a consumer report might superficially resemble a publisher's function of "deciding whether to publish, withdraw, post-

20

pone or alter content," *Zeran*, 129 F.3d at 330, publishers are held liable only for the ultimate inaccuracy of the content (as in the case of libel) and not, as here, for failing to follow reasonable procedures to ensure accuracy, where having such reasonable procedures constitutes a defense to liability. Again, the duty at issue—and the basis for liability—derives from the procedural requirements that the FCRA imposes on the consumer reporting agencies themselves, not from the agencies' dissemination of inaccurate third-party content.[4]

The district court therefore erred when it concluded that "Plaintiffs treat Defendants as if they are the publisher and distributor of third-party content," J.A. 96, without considering whether the claims at issue in this case sought to impose liability on that basis. The court reached its contrary conclusion by relying on a single quotation from the complaint, to the effect that Public Data had been "publishing inaccurate and/or incomplete public records and criminal information." J.A. 95-96 (quoting D.Ct. Docket No. 56 at 18-19). But the accuracy or completeness of information provided in a consumer report is wholly irrelevant to three of the plaintiffs' four claims, which allege that Public Data: (1) failed to obtain from its cus-

---

[4] Indeed, it is unclear that consumers even need to establish their reports were actually disseminated to prove a violation of this provision of the FCRA. Several provisions of the FCRA apply only when a consumer reporting agency disseminates, that is, "furnishes" a consumer report. *See, e.g.*, 15 U.S.C. § 1681c(d). In contrast, the statutory text applies the reasonable procedures requirement whenever a consumer reporting agency "*prepares*" a consumer report. 15 U.S.C. § 1681e(b) (emphasis added).

tomers the certifications required by 15 U.S.C. § 1681b(b)(1), (2) failed to provide

consumers with the notifications required by 15 U.S.C. § 1681k(a), and (3) failed

to provide consumers with their own information as required by 15 U.S.C.

§ 1681g. D.Ct. Docket No. 56 at 29-32. And even the plaintiffs' fourth claim,

which alleges Public Data violated the reasonable procedures requirement of

15 U.S.C. § 1681e(b), *see id.* at 32-33, turns on the adequacy of Public Data's *pro-*

*cedures* rather than on the accuracy or completeness of *content* that Public Data

published or spoke.

The sentence relied upon by the district court therefore did not form the ba-

sis for any alleged liability in the complaint. Indeed, the quoted language appears

in a section of the complaint arguing that Public Data's violations of FCRA were

willful, in a sentence that states in full: "For example, there have recently been

several cases brought against Defendants for *publishing inaccurate and/or incom-*

*plete public records and criminal information* about consumers who suffered ad-

verse employment actions." *See* D.Ct. Docket No. 56 at 18-22 (emphasis added).

The allegation thus was not a part of any asserted violation, but instead was intend-

ed to show that Public Data "knew or should have known about [its] legal obliga-

tions under the FCRA." *Id.* at 19. The statement thus does not support the conclu-

sion that the claims in this case seek to impose liability on Public Data for actions

it took as a publisher or speaker.

## B.  Even if the plaintiffs' FCRA claims were based on the content of Public Data's reports, Public Data is not immune because it is an "information content provider" for that content.

Section 230 provides immunity only when the claim at issue is "based on content provided by *another* information content provider." *LeadClick Media*, 838 F.3d at 174. Accordingly, a defendant will not be granted immunity if it is "also an 'information content provider' of the content which gives rise to the underlying claim." *Id.*; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) ("[T]he scope of § 230 immunity turns on whether [the defendant's] actions also make it an 'information content provider.'"). The allegations of the complaint show that Public Data is an information content provider with respect to its reports and therefore does not enjoy Section 230 immunity from claims based on furnishing those reports.

A defendant is an "information content provider" if it is "responsible, in whole or in part, for the creation or development" of content. 47 U.S.C. § 230(f)(3); *Jones*, 755 F.3d at 408. The definition "covers even those who are responsible for the development of content only in part." *LeadClick*, 838 F.3d at 174 (cleaned up). Further, a defendant is sufficiently responsible for the development of challenged content "if it contributes materially to the alleged illegality of the content." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1167-1168 (9th Cir. 2008). And "[a] material contribution . . . means being responsible for what makes

the displayed content allegedly unlawful." *Jones*, 755 F.3d at 410; *see also Lead-Click Media*, 838 F.3d at 174. Moreover, when liability would arise from posting material that was not "tendered to [the defendant] for posting online," a defendant who "mak[es] the affirmative decision to publish . . . contributes materially to its allegedly unlawful dissemination." *Roomates.com*, 521 F.3d at 1171.

As explained above, the district court erred when it held that the plaintiffs "seek to hold Defendants liable for the content of their website" without analyzing whether any of the plaintiffs' claims seek to impose liability based on that content. J.A. 92. As shown, none of the claims do. But even if the plaintiffs had sought to impose liability for the content of Public Data's reports, the district court was incorrect to find Public Data is not an "information content provider" for that content.

In its decision, the district court recited the complaint's extensive allegations about how Public Data creates its reports. It noted that Public Data gathers information from third parties; that it sorts, manipulates, and draws inferences from the data; that it creates its own summaries of the information; and that it collects the information into the reports it provides to customers. J.A. 83-84. "In sum," the district court stated, "Plaintiffs maintain that Defendants rewrite the court records into their own original entries into the report." J.A. 84 (internal quotation marks omitted). Nevertheless, the court concluded that those allegations "fall within the stat-

24

ute's definition of an access software provider" and held that Public Data is not an "information content provider." J.A. 95.

To the extent the court believed that a defendant cannot be both an "access software provider" and also an "information content provider," *see id.* (contrasting the definitions of the two terms), that is incorrect. The term "access software provider" is only relevant to the application of Section 230 immunity because the statute defines "interactive computer service" to include "any . . . access software provider." 47 U.S.C. § 230(f)(2). Accordingly, finding that a defendant is an access software provider simply means that the defendant qualifies as an interactive computer service. But as this Court has held, when a defendant qualifies as an interactive computer service, "the scope of § 230 immunity turns on whether that person's actions *also make it* an 'information content provider.'" *Nemet*, 591 F.3d at 254 (emphasis added). Finding the defendant is an access software provider does not answer that question.

Here, the allegations show that Public Data is an information content provider for its reports because it is "responsible, in whole or in part, for the creation or development" of the reports. 47 U.S.C. § 230(f)(3). First, Public Data is *wholly* responsible "for the creation" of its reports—they would not exist if Public Data did not affirmatively undertake to gather information from public sources and compile that information into reports. Public Data is also responsible in whole or in

25

part for the development of the reports. As alleged in the complaint and described by the district court, Public Data manipulates the data it collects, curates it to match specific individual consumers, puts it into a different format for reporting to customers, draws inferences from the data, and creates original summaries of the data. J.A. 83-84; D.Ct. Docket No. 56 at 17. Public Data therefore qualifies as an "information content provider" by virtue of its responsibility for the creation and development of its reports and is not entitled to immunity from claims based on their content.

Because the claims here are *not* based on the content of Public Data's reports, the nuance adopted by several courts—that responsibility for developing content depends on "contribut[ing] materially" to its "alleged illegality"—does not obviously apply. *Roommates.com*, 521 F.3d at 1167-1168. The claims do not allege that anything about the content of the reports is illegal. To the extent the claims depend on Public Data's practice of *furnishing* those reports (without complying with the FCRA's requirements) however, Public Data contributes materially to *that* alleged illegality; indeed, no FCRA liability existed for the underlying content until Public Data gathered it and compiled it into a report. The sources from which Public Data collects consumers' information do not seek Public Data out, and the information in Public Data's reports was not "tendered to [Public Data] for posting online." *Id.* at 1171. Instead, Public Data makes the "affirmative decision"

to furnish its reports (without complying with the FCRA), and therefore it "contributes materially to its allegedly unlawful dissemination." *Id.*

In a similar case, the Tenth Circuit held that Section 230 did not protect a defendant who had improperly obtained and then disseminated confidential telephone records. *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1197-1201 (10th Cir. 2009). That defendant was found "responsible" for the "development" of that "content"—and therefore an "information content provider" within the meaning of Section 230—because it unlawfully "convert[ed] . . . legally protected records from confidential material to publicly exposed information." *Id.* at 1199. Here, to the extent the plaintiffs' claims depend on the furnishing of consumer reports (without complying with the FCRA's requirements), Public Data is alleged to have illegally converted lawful information possessed by third parties into consumer reports; thus, it too is an "information content provider" with respect to such reports.

The district court erroneously focused on whether the complaint alleged that Public Data had "created the content" of its reports, concluding it had not because the information was "derived from other information content providers." J.A. 96. But Section 230's definition of information content provider does not turn on whether the defendant "created the content" but on whether it is responsible, in whole or in part, for the creation or development of the content. 47 U.S.C. § 230(f).

The allegations here show that Public Data met that standard and the district court was incorrect to hold otherwise.

## CONCLUSION

The district court's decision should be reversed.

Respectfully submitted,

STEPHEN VAN METER
*Acting General Counsel*

STEVEN Y. BRESSLER
*Acting Deputy General Counsel*

LAURA HUSSAIN
*Assistant General Counsel*

DERICK SOHN
*Senior Counsel*

CONSUMER FINANCIAL PROTECTION BUREAU
1700 G Street, N.W.
Washington, D.C. 20552

JOSHUA H. STEIN
*Attorney General*

DANIEL P. MOSTELLER
*Deputy General Counsel*

NORTH CAROLINA DEPARTMENT
   OF JUSTICE
114 W. Edenton Street
Raleigh, N.C. 27602

JAMES REILLY DOLAN
*Acting General Counsel*

JOEL MARCUS
*Deputy General Counsel*

/s/ Theodore (Jack) Metzler
THEODORE (JACK) METZLER
*Attorney*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with Federal Rule of Appellate Procedure 29(a)(5) in that it contains 6090 words.

October 14, 2021

/s/ Theodore (Jack) Metzler
Theodore (Jack) Metzler
Attorney
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580